IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,     :
                              :
                              :     NO. 4:96-CR-239
            v.                :
                              :
DAVID PAUL HAMMER             :
      Defendant.              :

<u>OPINION</u>

Slomsky, J.                                   December 1, 2011

## I.    INTRODUCTION

Before the Court is Defendant David Paul Hammer's Motion to Preclude the Capital

Prosecution, or Dismiss the Intent Factors and Substantial Planning and Premeditation

Aggravating Factor Because the Government's Deliberate Failure to Disclose Exculpatory

Materials Directly Disputing the Government's Case Violated Hammer's Fifth, Sixth and Eighth

Amendment Rights.  (Doc. No. 1334.)  For reasons that follow, the Court will deny the Motion.[1]

## II.    BACKGROUND INFORMATION

On September 18, 1996, a Grand Jury returned an indictment against Defendant David

Paul Hammer.  (Doc. No. 1.)  He was charged with killing Andrew Marti on April 13, 1996 at

the Allenwood Federal Correctional Complex in White Deer, Pennsylvania, in violation of 18

---

[1]     The Court has considered the following documents in deciding the Motion to Preclude the Capital Prosecution, or Dismiss the Intent Factors and Substantial Planning and Premeditation Aggravating Factor Because the Government's Deliberate Failure to Disclose Exculpatory Materials Directly Disputing the Government's Case Violated Hammer's Fifth, Sixth and Eighth Amendment Rights:  Defendant's Motion and Brief in Support thereof (Doc. Nos. 1334, 1335), Government's Brief in Opposition to Defendant's Motion (Doc. No. 1355), Defendant's Reply Brief (Doc. No. 1372), Government's Post-Argument Brief (Doc. No. 1386), and Defendant's Post-Argument Brief (Doc. No. 1387).

U.S.C. § 1111. (Id.) On April 9, 1997, the Government filed a notice of intent to seek the death penalty. (Doc. No. 93.)

Trial began on June 2, 1998, following jury selection for both the guilt and penalty phases of the case. (Doc. Nos. 448, 489-503.) Trial continued until June 22, 1998. (Id.) On June 22, 1998, after fourteen days of trial, Defendant Hammer withdrew his plea of not guilty and entered a plea of guilty, admitting that he killed Andrew Marti with premeditation and malice aforethought. (Doc. No. 504.) The late Judge Malcolm Muir presided over the trial and penalty phase hearing and continued as the judge assigned to this case until it was transferred on January 12, 2011 to the undersigned judge. (Doc. No. 1301.)

On June 30, 1998, a hearing commenced to determine whether the death penalty should be imposed, in accordance with 18 U.S.C. § 3593(b). (Doc. No. 553.) The hearing continued until July 20, 1998. On July 21, 22 and 23, 1998, counsel presented closing arguments. (Doc. Nos. 565-567.) On July 23, 1998, the jury began deliberating and on July 24, 1998 returned a verdict that the death penalty should be imposed. (Doc. No. 572.) On November 4, 1998, after denying motions for a new trial, Judge Muir imposed the death penalty. (Doc. No. 648.)

Defendant Hammer filed a Notice of Appeal to the Third Circuit Court of Appeals on November 12, 1998. (Doc. No. 651.) Thereafter, the Third Circuit granted Defendant's motion for voluntary dismissal of his direct appeal, United States v. Hammer, 226 F.3d 229 (3d Cir. 2000), *cert. denied*, 532 U.S. 959 (2001), and also denied a petition seeking reinstatement of the appeal. See United States v. Hammer, 239 F.3d 302 (3d Cir. 2001), *cert. denied*, 534 U.S. 831 (2001).

On March 29, 2002, Defendant filed a habeas corpus petition pursuant to 28 U.S.C. §

2255. (Doc. No. 767.)  Judge Muir held an evidentiary hearing on July 14, 2005 that continued

intermittently until September 29, 2005.  During the hearing, FBI Special Agent Anthony Malocu

testified that he had interviewed a number of prisoner witnesses concerning their knowledge of

Hammer's sexual practices, his background and his mental health.  (Doc. No. 1334 ¶ 7.)  On

September 21, 2005, after Judge Muir ordered the Government to provide defense counsel with

all reports of interviews, the Government turned over approximately twenty-six previously

undisclosed reports.[2]  (Id. ¶ 8.)

       In an opinion dated December 27, 2005, Judge Muir denied Hammer's request to

withdraw his guilty plea, but granted him a new penalty phase hearing.  United States v.

Hammer, 404 F. Supp. 2d 676, 800-01 (M.D. Pa. 2005).  This decision was essentially based on

the finding that the Government violated Brady v. Maryland, 373 U.S. 83 (1963), when it did not

turn over critical reports of interviews before Defendant's trial.  Hammer, 404 F. Supp. 2d at 801.

The court found that the interviews of Albert Ray Johnson, Jr., Royce Lee Fowler, Gaylon Don

Ball and Martin Guerrero may have contradicted the Government's evidence regarding

Hammer's alleged planning of the murder, and therefore tainted the jury's determination that

Defendant killed Marti after substantial planning and premeditation.  (Id. at 801.)  On July 9,

2009, Judge Muir ordered the Government to file a motion to have this case placed on a trial list

for a new penalty phase hearing within sixty days.  (Doc. No. 1245.)

---

[2]     An inconsistency exists over the number of reports of interviews the Government
failed to disclose to Defendant prior to his trial and penalty phase hearing.  During the § 2255
hearing, Judge Muir mentioned twenty-six reports turned over to the court by the Government,
eleven of which were found to contain Brady material.  (Hr'g Tr. 5:2-9, Sept. 22, 2005.)
However, in his opinion dated December 27, 2005, Judge Muir noted a different number of
reports of interview: thirty-three and thirty-two, respectively.  United States v. Hammer, 404 F.
Supp. 2d 676, 690, 788 (M.D. Pa. 2005).

After being awarded a new penalty phase hearing, Defendant Hammer submitted a

request to the Department of Justice to reconsider its decision to seek the death penalty. A

review of the case was conducted by the Department of Justice. (Doc. Nos. 1289, 1293, 1297,

1300.) The review concluded on January 6, 2011 when Attorney General Eric Holder authorized

the prosecution to seek the death penalty against Defendant Hammer. (Doc. No. 1300.) On

January 7, 2011, the United States Attorney filed a motion requesting that the case be placed on

the trial list for a new penalty proceeding. (Id.)

Defendant's attorneys then filed a series of motions and supporting briefs. (Doc. Nos.

1326-1347.) This Opinion addresses the Motion filed on May 19, 2011, in which Defendant

requests that the Court preclude the capital prosecution or dismiss the intent factor of substantial

planning and premeditation as a remedy for the Government's Brady violation. (Doc. Nos. 1334,

1335.) On June 17, 2011, the Government filed a brief in opposition. (Doc. No. 1355.) On June

30, 2011, oral argument was held on all outstanding motions. (Doc. Nos. 1378, 1379.) On July

26, 2011, both parties submitted post-argument briefs. (Doc. Nos. 1386, 1387.)

## III.   DISCUSSION

Hammer argues here that where his rights pursuant to Brady v. Maryland, 373 U.S. 83

(1963), have been violated and witnesses whose statements were improperly withheld have died,

the Government should be precluded from pursuing the death penalty.[3] (Hr'g Tr. 27:1-13, June

30, 2011.) Defendant identifies four legal theories that he asserts entitle him to this relief:  (1)

---

[3]      Hammer argues in the alternative that if the Court is unwilling to preclude the
Government from pursuing the death penalty, "[a]t a minimum, the Government must be
precluded from pursuing the intent factors and/or the substantial planning and premeditation
aggravator, and prohibited from contesting Mr. Hammer's childhood sexual abuse mitigation."
(Doc. No. 1335 at 3.) This argument is discussed infra.

resentencing would violate the Fifth Amendment bar against double jeopardy; (2) the death of

three of the previously undisclosed witnesses impairs his Sixth Amendment right to present a

defense; (3) the Government's violation of Hammer's rights, and the death of the witnesses,

undermines the heightened reliability and procedural safeguards required under the Eighth

Amendment in capital trials; and (4) the relief requested is appropriate under the Court's

supervisory power to cure prejudice arising from the Government's deliberate and willful

misconduct.  (Doc. No. 1335.)

### A.      The Double Jeopardy Clause Does Not Bar a New Capital Sentencing Hearing

The Double Jeopardy Clause of the Fifth Amendment requires that once a defendant is

placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the

defendant may neither be tried nor punished a second time for the same offense.  Sattazahn v.

Pennsylvania, 537 U.S. 101, 106 (2003).  The Supreme Court has held that double jeopardy

applies to capital sentencing proceedings that have the hallmarks of a trial on guilt or innocence.

Sattazahn, 537 U.S. at 106 (citing Bullington v. Missouri, 451 U.S. 430, 439 (1981)).  A capital

sentencing hearing under the Federal Death Penalty Act ("FDPA") involves a jury and bears

many of the hallmarks of a trial.  See 18 U.S.C. § 3593(b) (if the defendant is found guilty or

pleads guilty to a capital offense, the judge conducts a separate sentencing hearing before a jury

to determine punishment).  Therefore, double jeopardy may apply in this case.

The critical issue in determining whether double jeopardy protection applies in capital

sentencing proceedings is whether there has been an "acquittal."  Sattazahn, 537 U.S. at 107-10.

If the defendant can establish that a jury or court "acquitted" him of the death sentence during his

first capital sentencing proceeding, resulting for example, in the imposition of a life sentence,

double jeopardy prohibits the government from commencing a second proceeding seeking the

death penalty. Id. at 107-09.  A defendant is acquitted for the purposes of double jeopardy in a

capital sentencing trial if a jury unanimously concludes that a State has failed to prove its case.

Arizona v. Rumsey, 467 U.S. 203, 209-10 (1984); see Sattazahn, 537 U.S. at 112 ("if petitioner's

first sentencing jury had unanimously concluded that Pennsylvania failed to prove any

aggravating circumstances, that conclusion would operate as an 'acquittal' of the greater offense"

for the purposes of the double jeopardy analysis).

In this case, the jury did not conclude that the state had failed to prove its case, as it

unanimously recommended that Hammer be sentenced to death for the murder of Andrew Marti.

(Doc. No. 572).  Although Hammer has succeeded through a § 2255 motion in invalidating his

death sentence because of a violation of Brady v. Maryland, 373 U.S. 83 (1963), this result does

not amount to an acquittal by the court or the jury, and there is no double jeopardy bar to the

Government retrying him, as "jeopardy" never terminated with respect to his offense.  Sattazahn

v. Pennsylvania, 537 U.S. 101, 112-13 (2003); see Poland v. Arizona, 476 U.S. 147, 152 (1986)

("[W]hen a defendant obtains reversal of his conviction on appeal, the original conviction has

been nullified and the slate wiped clean.  Therefore, if the defendant is convicted again, he

constitutionally may be subjected to whatever punishment is lawful . . . .") (internal citations

omitted).  Therefore, Hammer's argument that his capital prosecution should be barred by double

jeopardy is without merit.

**B.     The Court Will Not Preclude the Capital Hearing or Dismiss the Intent and Aggravating Factors Based Upon a Violation of <u>Brady v. Maryland</u>**

Defendant Hammer argues that government misconduct in withholding <u>Brady</u> evidence critical to the outcome of the first sentencing proceeding triggers Double Jeopardy concerns and bars a second capital sentencing hearing.  (Doc. No. 1335 at 3-6.)  The Court disagrees with the position of this defense.

In <u>Oregon v. Kennedy</u>, 456 U.S. 667 (1982), the Supreme Court held that retrial is barred if prosecutors engage in conduct "intend[ed] . . . to subvert the protections afforded by the Double Jeopardy Clause."  <u>Kennedy</u>, 456 U.S. at 675-76.  Although <u>Kennedy</u> involved a situation where the prosecution provoked a mistrial during a trial, at least two Circuits have discussed extending under certain limited circumstances the <u>Kennedy</u> holding to cases in which the prosecution's misconduct is not discovered until after trial and conviction.  <u>See</u> <u>United States v. Catton</u>, 130 F.3d 805, 807 (7th Cir. 1992); <u>United States v. Wallach</u>, 979 F.2d 912, 916 (2d Cir. 1992).  No definitive ruling on the extension was made because both courts held that the defendant did not make the requisite showing of conduct that would trigger double jeopardy protection.  <u>Catton</u>, 130 F.3d at 807-08 ("we have left open the question whether to adopt <u>Wallach's</u> dictum as the law of this circuit" because the defendant did not show requisite prosecutorial error); <u>Wallach</u>, 979 F.2d at 917 ("the factual predicate for extending <u>Kennedy</u> to bar [defendant's] retrial . . . is totally lacking.").

<u>Oregon v. Kennedy</u> is a case of limited scope.  The Court rejected tests of prosecutorial misconduct that amounted to "overreaching" or "bad faith misconduct" or to conduct that "threatens the harassment of an accused by successive prosecutions or declaration of a mistrial so

as to afford the prosecution a more favorable opportunity to convict the defendant." Kennedy,

456 U.S. at 674 (internal citations omitted).  A different test was adopted.  As the Court stated in

Kennedy:

> By contrast, a standard that examines the intent of the prosecutor, though
> certainly not entirely free from practical difficulties, is a manageable
> standard to apply.  It merely calls for the court to make a finding of fact.
> Inferring the existence or nonexistence of intent from objective facts and
> circumstances is a familiar process in our criminal justice system.  When it
> is remembered that resolution of double jeopardy questions by state trial
> courts are reviewable not only within the state court system, but in the
> federal court system on habeas corpus as well, the desirability of an easily
> applied      principle      is      apparent.
>
>         *     *     *
>
> [W]e do hold that the circumstances under which such a defendant may
> invoke the bar of double jeopardy in a second effort to try him are limited
> to those cases in which the conduct giving rise to the successful motion for
> a mistrial was intended to provoke the defendant into moving for a mistrial.

Id. at 675, 679.

     This Court has examined carefully the Brady material withheld by the Government that

led the late Judge Malcolm Muir to grant a resentencing hearing.  United States v. Hammer, 404

F. Supp. 2d 676, 781-98 (M.D. Pa. 2006).  The information consists of F.B.I. 302 Reports of

Interviews[4] with inmates Albert Ray Johnson, Jr., Royce Lee Fowler, Martin Guererro and

Gaylon Don Ball.  Hammer, 404 F. Supp. 2d at 796.  These reports were provided to the

Assistant U.S. Attorney prosecuting Defendant Hammer.  (Findings of Fact[5] Nos. 1604, 1612,

---

[4]     F.B.I. 302 Reports are written accounts of interviews conducted by F.B.I. agents
during the course of an investigation.  These written accounts are identified as "302" documents.
(Finding of Fact No. 1590.)

[5]     All citations to "Findings of Fact" refer to the findings of fact contained in Judge
Muir's opinion dated December 27, 2005, which are numbered from 1 through 1705.  United

1620, 1626.) Judge Muir held that the failure to disclose this material, which was a <u>Brady</u>

violation, did not entitle Mr. Hammer to withdraw his guilty plea. <u>Hammer</u>, 404 F. Supp. 2d at

801. The court was not convinced that documents relating to Johnson, Fowler, Ball and Guererro

and one other U.S. Bureau of Prisons document would have deterred Mr. Hammer from entering

a plea to first degree murder. <u>Id.</u> at 798.

    With respect to the <u>Brady</u> violation on the penalty phase proceeding, Judge Muir had a

different opinion. The Government offered as an aggravating circumstance substantial planning

and premeditation. The prosecution relied upon evidence that Mr. Hammer braided sheets into

ropes and that it took time to make heavy duty restraints to keep the victim, Andrew Marti, in

place. (Findings of Fact Nos. 1637, 1638, 1687.) The victim was a 6'4", 200-pound man who

was tied to a bed and then strangled by Mr. Hammer. (Findings of Fact Nos. 1638, 1687.) The

victim agreed to be tied as a part of a preconceived plan to use their relationship as a means to

have the deceased transferred to another facility. Unbeknownst to the deceased, Mr. Hammer

used the opportunity to strangle him. Judge Muir found, however, that the withheld statements

raised a different inference for the conduct of Mr. Hammer that was favorable to him. As the

court stated: "The information from Albert Ray Johnson, Royce Lee Fowler, and Gaylon Ball

would have supported Mr. Hammer's contention that the sheets were braided into ropes for the

purpose of being used as part of a consensual sexual activity involving bondage. See Findings of

Fact Nos. 1595 through 1696. The testimony of Martin Guerrero would have bolstered Mr.

Hammer's position that the hostage scenario was untrue." <u>Hammer</u>, 404 F. Supp. 2d at 796.

    When this Court asked Government counsel at oral argument why these 302's were not

_____

States v. Hammer, 404 F. Supp. 2d 676, 692-791 (M.D. Pa. 2005).

disclosed to the defense, the Assistant U.S. Attorney responded that "part of the reason" was the government's concern that disclosure would risk putting an inmate "in serious jeopardy." (Hr'g Tr. 64:23-65:9, June 30, 2011) Moreover, before the penalty phase hearing, the Government did not believe that the statements contained Brady materials because Mr. Hammer was aware of the information. Hammer, 404 F. Supp. 2d at 798.

Many 302's were provided to the defense for the § 2255 hearing. The issue concerning the undisclosed reports arose during the cross-examination of the case agent, FBI Agent Maluco. (Hr'g Tr. 135:12-137:17, Sept. 20, 2005.) Defense counsel learned that there were additional 302 reports of interviews of other inmates questioned by Agent Malocu. Counsel again asked for disclosure of those reports. (Hr'g Tr. 20:13-14, Sept. 21, 2005.) Judge Muir, without viewing any of the 302s, ordered that they be turned over to defense counsel. (Hr'g Tr. 20:23-24, Sept. 21, 2005.) At the end of the day, prosecutor Martin informed Judge Muir that the Government had turned over the additional 302s to defense counsel, but moved to preclude counsel from disclosing those 302 reports to Mr. Hammer. (Hr'g Tr. 152:12-20, Sept. 21, 2005.) Mr. Hammer's counsel objected to that request and, as a result, Judge Muir ordered that those 302 reports be turned over to the Court for review. (Hr'g Tr. 152:21-155:3, Sept. 21, 2005.) The next morning, Judge Muir ordered that, of the twenty-six 302's provided to him for review, eleven be disclosed to the defense because they contained discoverable material. (Hr'g Tr. 5:2-9, Sept. 22, 2005.)

Although at the hearing before Judge Muir the prosecutor did not specifically say that the Government was concerned that the safety of the inmates interviewed would be in jeopardy, this concern is evidenced in the Government's desire to prevent Mr. Hammer having access to the

-10-

interview reports.  (Hr'g Tr. 152:12-154:14, Sept. 21, 2005.)  Moreover, the Government did not

believe at the time that the 302s contained <u>Brady</u> material.  <u>United States v. Hammer</u>, 404 F.

Supp. 2d 676, 798 (M.D. Pa. 2005).  Furthermore, as the Government correctly argues in its brief

in opposition to Defendant's motion, Hammer was aware of the bondage incidents recounted in

the FBI 302 reports, as he participated in the bondage episodes and on prior occasions braided

sheets for sexual bondage.  (Doc. No. 1355 at 16-17.)  Defense counsel, although unaware that

Mr. Hammer had previously used braided sheets for sexual bondage while incarcerated in the

Special Housing Unit at USP-Allenwood, was likewise aware of the importance of bondage

incidents, arguing to the jury that Mr. Marti was bound to the bed as part of consensual sexual

bondage.  <u>Hammer</u>, 404 F. Supp. 2d at 785-77.  As noted in <u>United States v. Perdomo</u>, 929 F.2d

967, 973 (3d Cir. 1991), "[e]vidence is not considered to be suppressed if the defendant either

knew or should have known of the essential facts permitting him to take advantage of any

exculpatory evidence."

      Given all these circumstances, the Court finds that Government counsel did not withhold

the 302's with the intent to undermine Mr. Hammer's right to a penalty phase hearing in

accordance with the FDPA.  Judge Muir in his comprehensive opinion in which he granted Mr.

Hammer a new penalty phase hearing made no finding that the prosecution intentionally withheld

the 302's to undermine Mr. Hammer's right to a penalty phase hearing under the FDPA.  When

the 302's were disclosed, the defense capitalized on their content and used them to overturn the

death penalty verdict.  The Government justifiably had concern for the safety of their witnesses

and believed that Mr. Hammer, a participant in the sexual bondage, would be aware of the

defense to the aggravating circumstances relied upon to support the death penalty.  The failure to

disclose the reports of interviews was not intentional and Mr. Hammer will be afforded the appropriate remedy for a <u>Brady</u> violation, which is a new trial or, in this case, a new penalty phase hearing.  Dismissal of the intent or aggravating factors is not a remedy for a violation of <u>Brady</u>, and no court has reached this conclusion.

C. **The Death of Three Witnesses Will Not Result in a Violation of Defendant's Sixth and Eighth Amendment Rights**

Defendant Hammer contends that the violation of <u>Brady v. Maryland</u>, when combined with the subsequent death of three of the undisclosed witnesses, Gaylon Don Ball, Martin Guerrero and Royce Lee Fowler, will impair his Sixth Amendment right to present a defense and will undermine the heightened reliability and procedural safeguards required under the Eighth Amendment in capital trials.  (Doc. No. 1335 at 6-8.)  Defendant seeks as a remedy preclusion of a new penalty phase hearing.  He also asks the Court to exercise its supervisory power to preclude the new hearing or award additional relief.

In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373 U.S. at 87.  The aim of due process is avoidance of an unfair trial to the accused, so when a prosecutor fails to disclose material evidence, the focus is not upon the prosecutor's failure to disclose, but upon the effect of non-disclosure on the trial.  <u>Smith v. Phillips</u>, 455 U.S. 209, 219-20 (1982);  <u>United States v. Coleman</u>, 862 F.2d 455, 458-59 (3d Cir. 1988).  In <u>Brady</u>, the Court found the undisclosed admission to be relevant to punishment and thus affirmed the order of the Maryland Court of Appeals which ordered a retrial on the issue

-12-

of punishment.  373 U.S. at 87-88.

The Supreme Court "has assumed that Brady violations that have affected the judgment

of a jury normally will be remedied by a new trial, [but] has left open the possibility of barring

retrial in response to particularly egregious due process violations."  Gov't of Virgin Islands v.

Fahie, 419 F.3d 249, 252 (3d Cir. 2005) (citing United States v. Russell, 411 U.S. 423, 431-32

(1973) ("[W]e may some day be presented with a situation in which the conduct of law

enforcement agents is so outrageous that due process principles would absolutely bar the

government from invoking judicial process to obtain a conviction . . . ."));  United States v. Davis,

578 F.2d 277, 280 (10th Cir. 1978) (holding that a violation of due process under Brady does not

entitle a defendant to an acquittal, but only to a new trial in which the convicted defendant has

access to the wrongfully withheld evidence).  In Fahie, the Third Circuit concluded that dismissal

of an indictment for a Brady violation has a two part test: "While retrial is normally the most

severe sanction available for a Brady violation, where a defendant can show both willful

misconduct by the government, and prejudice, dismissal may be proper."  419 F.3d at 255.  Thus,

willful misconduct and prejudice must both be established before the extreme sanction of

dismissal of an indictment, or in the context here, preclusion of a new penalty phase hearing.

In addition, while courts have acknowledged that the decision to provide a remedy other

than a new trial for a violation of Brady v. Maryland is within the discretion of the court, they

have been unwilling to exercise that discretion.  See United States v. Wecht, No. 06-0026, 2008

WL 2223869, at *5 (W.D. Pa. May 23, 2008) (dismissal of an indictment with prejudice as a

remedy for Brady violations is within the trial court's supervisory powers under certain

circumstances).  In Virgin Islands v. Ward, No. F264/2008, 2011 WL 2214668 (V.I. May 26,

2011), the Superior Court of the Virgin Islands granted two new trials after finding that the prosecution's conduct amounted to willful, egregious and material <u>Brady</u> violations.  <u>Ward</u>, 2011 WL 2214668, at *12, *rev'd and remanded by* <u>Virgin Islands v. Ward</u>, No. 11-0041, 2011 WL 4543925, at *12 (V.I. Sept. 27, 2011) (reversing order of the Superior Court because prosecution did not violate <u>Brady</u>).  But the Superior Court still declined to dismiss the Information against the defendant because "dismissal for a <u>Brady</u> violation is not mandatory under applicable case law, there remains a general prohibition against the dismissal of cases, and if full disclosure has finally been made to the defense, it is preferable that final disposition of [the] case be made through the jury system."  <u>Ward</u>, 2011 WL 2214668, at *12.  In <u>Fahie</u>, the Third Circuit found "no case where a federal appellate court upheld dismissal with prejudice as a remedy for a <u>Brady</u> violation."  <u>Gov't of Virgin Islands v. Fahie</u>, 419 F.3d 249, 254 n.6 (3d Cir. 2005).

In <u>Fahie</u>, the Third Circuit held that because Fahie did not show willful misconduct, the question of prejudice need not be addressed.  419 F.3d at 256-57.  The same principal applies here.  Because Hammer has not shown willful misconduct by the prosecutors, the question of prejudice arising from the death of the three witnesses need not be addressed.  In accordance with the above authorities, Mr. Hammer's remedy is a new penalty phase hearing.  Judge Muir has ordered one.  <u>United States v. Hammer</u>, 404 F. Supp. 2d 676, 801 (M.D. Pa. 2005).  As noted previously, this remedy is all the relief that is appropriate here.

Mr. Hammer also argues that in view of the Government's misconduct and because Mr. Guerrero, Mr. Fowler and Mr. Ball have died, he is "precluded from presenting witness testimony (1) directly disputing the Government's theories of intent and aggravation; and, [sic] (2) supporting mitigation evidence presented by Mr. Hammer but aggressively challenged by the

Government." (Doc. No. 1335 at 10.)  Mr. Hammer asks the Court to exercise its supervisory power and preclude a new hearing or, alternatively, to dismiss the intent and substantial planning and premeditation factors and prohibit the Government from disputing Mr. Hammer's childhood abuse mitigation.  (Id. at 11-13.)

While it may be preferable to present live testimony, nothing prohibits defense counsel from introducing the 302 statements of Mr. Guerrero, Mr. Fowler and Mr. Ball at the sentencing proceeding.  This procedure would obviate or reduce significantly any prejudice arising from their absence at the hearing.  The Federal Rules of Evidence do not apply to sentencing proceedings under the Federal Death Penalty Act.  United States v. Llera Plaza, 179 F. Supp. 2d 464, 468 n.3, 469 (E.D. Pa. 2001).  The only statutory restraint on the introduction of information at the sentencing proceedings is that the information must be relevant and its probative value must not be outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.  18 U.S.C. § 3593(c).  The content of the 302 statements in question are relevant to and would not raise the dangers set forth in section 3593(c).  Therefore, the Court does not find that Defendant Hammer is unable to present a defense, or that the heightened reliability required in a capital sentencing hearing has been undermined.

Federal courts may exercise their supervisory powers to implement a remedy for a violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and as a remedy designed to deter illegal conduct.  United States v. Hasting, 461 U.S. 499, 505 (1983) (citations omitted).  For reasons already discussed in this Opinion, the Court finds that the proper remedy for a violation of Defendant Hammer's rights is a new penalty phase hearing.  The remedies available to a court in

-15-

exercising its supervisory authority are not warranted here.  Therefore, the Court will not exercise its supervisory powers to provide Hammer with the relief requested.

## IV.    CONCLUSION

Based on the forgoing reasons, the Court will deny Hammer's Motion to Preclude the Capital Prosecution and the other relief requested.  (Doc. No. 1334.)

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| | : | NO. 96-239 |
| v. | : | |
| | : | |
| DAVID PAUL HAMMER, | : | |
| | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this 1st day of December 2011, upon consideration of Defendant's Motion to Preclude the Capital Prosecution, or Dismiss the Intent Factors and Substantial Planning and Premeditation Aggravating Factor Because the Government's Deliberate Failure to Disclose Exculpatory Materials Directly Disputing the Government's Case Violated Hammer's Fifth, Sixth and Eighth Amendment Rights (Doc. No. 1334), Government's Brief in Opposition (Doc. No. 1355), Defendant's Reply Brief (Doc. No. 1372), Government's Post-Argument Brief (Doc. No. 1386), and Defendant's Post-Argument Brief (Doc. No. 1387), and in accordance with the Opinion of this Court dated December 1, 2011, it is **ORDERED** that Defendant's Motion to Preclude the Capital Prosecution, or Dismiss the Intent Factors and Substantial Planning and Premeditation Aggravating Factor (Doc. No. 1334) is **DENIED**.

BY THE COURT:

*Joel Slomsky*
JOEL H. SLOMSKY, J.