IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,              :
                                       :
                                       :         NO. 4:96-CR-239
              v.                       :
                                       :
DAVID PAUL HAMMER                      :
       Defendant.                      :

## OPINION

**Slomsky, J.**                                    **December 1, 2011**

## I.    INTRODUCTION

Before the Court is Defendant David Paul Hammer's Motion to Declare the Federal

Death Penalty Act Unconstitutional. (Doc. No. 1343.) For reasons that follow, the Court will

deny the Motion.[1]

## II.    BACKGROUND INFORMATION

On September 18, 1996, a Grand Jury returned an indictment against Defendant David

Paul Hammer. (Doc. No. 1.) He was charged with killing Andrew Marti on April 13, 1996 at

the Allenwood Federal Correctional Complex in White Deer, Pennsylvania, in violation of 18

U.S.C. § 1111. (Id.) On April 9, 1997, the Government filed a notice of intent to seek the death

penalty. (Doc. No. 93.)

Trial began on June 2, 1998, following jury selection for both the guilt and penalty phases

of the case. (Doc. Nos. 448, 489-503). Trial continued until June 22, 1998. (Id.) On June 22,

---

[1]      The Court has considered the following documents in deciding Defendant's
Motion to Declare the Federal Death Penalty Unconstitutional: Defendant's Motion and Brief in
Support thereof (Doc. Nos. 1343, 1347), Government's Brief in Opposition to Defendant's
Motion (Doc. No. 1360), and Defendant's Reply Brief (Doc. No. 1371).

1998, after fourteen days of trial, Defendant Hammer withdrew his plea of not guilty and entered a plea of guilty, admitting that he killed Andrew Marti with premeditation and malice aforethought. (Doc. No. 504.) The late Judge Malcolm Muir presided over the trial and penalty phase hearing and continued as the judge assigned to the case until it was transferred on January 12, 2011 to the undersigned judge. (Doc. No. 1301.)

On June 30, 1998, a hearing commenced to determine whether the death penalty should be imposed, in accordance with 18 U.S.C. § 3593(b). (Doc. No. 553.) The hearing continued until July 20, 1998. On July 21, 22 and 23, 1998, counsel presented closing arguments. (Doc. Nos. 565-567.) On July 23, 1998, the jury began deliberating and on July 24, 1998 returned a verdict that the death penalty should be imposed. (Doc. No. 572.) On November 4, 1998, after denying motions for a new trial, Judge Muir imposed the death penalty. (Doc. No. 648.)

Defendant Hammer filed a Notice of Appeal to the Third Circuit Court of Appeals on November 12, 1998. (Doc. No. 651.) Thereafter, the Third Circuit granted Defendant's motion for voluntary dismissal of his direct appeal, United States v. Hammer, 226 F.3d 229 (3d Cir. 2000), cert. denied, 532 U.S. 959 (2001), and also denied a petition seeking reinstatement of the appeal. See United States v. Hammer, 239 F.3d 302 (3d Cir. 2001), cert. denied, 534 U.S. 831 (2001).

On March 29, 2002, Defendant filed a habeas corpus petition pursuant to 28 U.S.C. § 2255. (Doc. No. 767.) Judge Muir held an evidentiary hearing on July 14, 2005 that continued intermittently until September 29, 2005. In an opinion dated December 27, 2005, Judge Muir denied Hammer's request to withdraw his guilty plea, but granted him a new penalty phase hearing. United States v. Hammer, 404 F. Supp. 2d 676, 800-01 (M.D. Pa. 2005). This decision

was essentially based on the Government's failure to disclose material information Defendant

was entitled to receive under Brady v. Maryland, 373 U.S. 83 (1963).  Hammer, 404 F. Supp. 2d

at 801.  On July 9, 2009, Judge Muir ordered the Government to file a motion to have this case

placed on a trial list for a new penalty phase hearing within sixty days.  (Doc. No. 1245.)

After being awarded a new penalty phase hearing, Defendant Hammer submitted a

request to the Department of Justice to reconsider its decision to seek the death penalty.  A

review of the case was conducted by the Department of Justice.  (Doc. Nos. 1289, 1293, 1297,

1300.)  The review concluded on January 6, 2011 when Attorney General Eric Holder authorized

the prosecution to seek the death penalty against Defendant Hammer.  (Doc. No. 1300.)  On

January 7, 2011, the United States Attorney filed a motion requesting that the case be placed on

the trial list for a new penalty proceeding.  (Id.)

Defendant's attorneys then filed a series of motions and supporting briefs.  (Doc. Nos.

1326-1347.)  This Opinion addresses the Motion filed on May 19, 2011, in which Defendant

requests that the Federal Death Penalty Act be declared unconstitutional.  (Doc. Nos. 1343,

1347.)  On June 20, 2011, the Government filed a brief in opposition.  (Doc. No. 1360.)  On June

30, 2011, oral argument was held on all outstanding motions.  (Doc. Nos. 1378, 1379.)  On July

26, 2011, both parties submitted post-argument briefs.  (Doc. Nos. 1386, 1387.)

## III.   DISCUSSION

Defendant makes five arguments in support of his Motion requesting the Court declare

the Federal Death Penalty Act ("FDPA") unconstitutional:  (1) it is imposed in an arbitrary,

capricious and unusual manner in violation of the Eighth Amendment; (2) use of the sufficiency

standard during the selection phase of trial violates the Sixth Amendment; (3) the FDPA lacks a

principled basis for distinguishing cases in which the death penalty is sought; (4) the FDPA

violates evolving standards of decency; and (5) the FDPA violates the Fifth and Eighth

Amendments. (Doc. No. 1347.) For reasons that follow, the Motion will be denied.

### A.     The Federal Death Penalty Act is Not Unconstitutional and Does Not Operate in an Arbitrary, Capricious and Irrational Manner

Defendant argues that the FDPA is invalid because the federal death sentence is sought

infrequently and imposed even more infrequently, and there is no meaningful basis for

distinguishing those cases where the death penalty is imposed and where it is not imposed. (Doc.

No. 1347 at 1-6.) Given this uncertainty, Defendant argues that the federal death penalty is

imposed in an arbitrary, capricious and unusual manner in violation of the Eighth Amendment.

(Id.)

In support of his argument, Defendant relies on the Supreme Court's decision in Furman

v. Georgia, 408 U.S. 238 (1972). In Furman v. Georgia, the Supreme Court struck down all

then-existing state death penalty statutes as violating the Eighth and Fourteenth Amendments on

the grounds that those death penalty statutes were inequitable and discriminatory. 408 U.S. at

255-57 (Douglas, J., concurring). The Court did not hold that the infliction of the death penalty

*per se* violated the Constitution, but instead that "where discretion is afforded a sentencing body

on a matter so grave as the determination of whether a human life should be taken or spared, that

discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and

capricious action." Gregg v. Georgia, 428 U.S. 153, 189 (1976) (discussing Supreme Court's

holding in Furman).

Under Furman, the death penalty cannot be imposed under sentencing procedures that

create a substantial risk that it would be inflicted in an arbitrary and capricious manner. <u>Gregg</u>,

428 U.S. at 188.  In order to prevent the arbitrary and capricious imposition of the death penalty,

a death penalty statute must:  (1) rationally narrow the class of death-eligible defendants; and (2)

permit a reasoned, individualized sentencing determination based on a death-eligible defendant's

record, personal characteristics, and the circumstances of the defendant's crime. <u>Kansas v.</u>

<u>Marsh</u>, 548 U.S. 163, 173-74 (2006); <u>see</u> <u>also</u> <u>McCleskey v. Kemp</u>, 481 U.S. 279, 302-04 (1987);

<u>Zant v. Stephens</u>, 462 U.S. 862, 877-79 (1983); <u>Gregg v. Georgia</u>, 428 U.S. 153, 189 (1976).

Therefore, the mere fact that the death penalty is rarely sought or imposed does not itself render

the FDPA unconstitutional.  <u>United States v. Solomon</u>, No. 05-385, 2007 WL 1468794, at *2

(W.D. Pa. May 14, 2007); <u>United States v. Sampson</u>, 275 F. Supp. 2d 49, 87-88 (D. Mass. 2003).

The constitutionality of the statute depends instead on the process under which the penalty is

imposed.

   The FDPA complies with the procedural mandates outlined by the Supreme Court.  It

accomplishes the constitutionally mandated narrowing process by requiring that the jury

unanimously find the existence of an intent factor and at least one statutory aggravating factor

beyond a reasonable doubt before a defendant is considered eligible for the death penalty.  18

U.S.C. §§ 3591-3593; <u>see</u> <u>Zant v. Stephens</u>, 462 U.S. 862, 878 (1983); <u>United States v. Cooper</u>,

91 F. Supp. 2d 90, 96-97 (D.D.C. 2000).  Then, at the selection phase, jurors must make an

individualized determination regarding whether the defendant should be selected for the death

penalty.  The jurors must balance the statutory and non-statutory aggravating factors that it finds

the Government has proved beyond a reasonable doubt against the mitigating factors it finds the

defendant proved by a preponderance of the evidence.  18 U.S.C. § 3593(c), (e); <u>see</u> <u>United</u>

States v. Sablan, No. 00-00531-WYD, 2006 WL 1028780, at *1 (D. Colo. Apr. 18, 2006). The aggravating factors must sufficiently outweigh the mitigating factors. 18 U.S.C. § 3593(e).

      Contrary to Defendant's argument, the FDPA complies with the mandates of Furman and its progeny by establishing procedures that avoid the arbitrary and capricious imposition of the death penalty. Several federal courts have come to this conclusion. See United States v. Caro, 597 F.3d 608, 622-23 (4th Cir. 2010) (finding that FDPA establishes various safeguards in order to meet Eighth Amendment standards); United States v. Sampson, 486 F.3d 13, 24 (1st Cir. 2007) ("the FDPA fully meets the requirements of guided discretion, suitably directing and limiting the leeway afforded to the decisionmakers" and is not arbitrary); Sablan, 2006 WL 1028780, at *3 (concluding that the FDPA meets the constitutional requirements described by the Court in Zant v. Stephens, 462 U.S. 862 (1983)); United States v. Le, 327 F. Supp. 2d 601, 608-09 (E.D. Va. 2004) (finding that the FDPA aggravating factors "apply to a narrow range of homicides and provide a principled basis for distinguishing between those homicides that warrant imposition of the death penalty from those that do not."). See also United States v. Solomon, No. 05-385, 2007 WL 1468794, at *2 (W.D. Pa. May 14, 2007) (rejecting defendant's constitutional challenge to the FDPA, "an Act of Congress that has consistently withstood various constitutional challenges."); United States v. Sampson, 275 F. Supp. 2d 49, 88-89 (D. Mass. 2003) ("The FDPA fully meets the requirements established in Gregg for guiding the discretion of the jury in a capital case."); United States v. Bin Laden, 126 F. Supp. 2d 256, 263 (S.D.N.Y. 2000) (rejecting defendant's argument that the FDPA is imposed on the "arbitrary and capricious basis of geography"). Accordingly, the FDPA is not unconstitutional for the reasons advanced by Defendant.

-6-

**B.     The Use of the Sufficiency Standard During the Selection Phase Does Not Violate the Sixth Amendment**

Defendant argues that because the jury can recommend a death sentence under 18 U.S.C. § 3593(e)[2] when the aggravating factor or factors "sufficiently outweigh the mitigating factors," and the reasonable doubt standard does not apply to this weighing process, this omission violates his Sixth Amendment rights.  (Doc. No. 1347 at 7-9.)

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Court held that the Sixth Amendment requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  530 U.S. at 490.  In Ring v. Arizona, 536 U.S. 584 (2002), the Supreme Court applied the rule of Apprendi to capital sentencing schemes, holding that under the Sixth Amendment, the facts that render a defendant eligible for the death sentence, including the requisite state of mind and at least one statutory aggravating factor, are the functional equivalent of elements of the offense and must be found by a jury beyond a reasonable doubt.  Ring, 536 U.S. at 607-09.  Hammer argues that because the FDPA does not require that the jury make the determinations under 18 U.S.C. § 3593(e) beyond a reasonable doubt, it violates the Sixth Amendment and should be declared unconstitutional.  (Doc. No. 1347 at 7-9.)

18 U.S.C. § 3593(e) essentially tracks verbatim the death sentencing provision of the

---

[2]     Under 18 U.S.C. § 3593(e) "the jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.  Based on this consideration, the jury by unanimous vote, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without the possibility of release or some other lesser sentence."

Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848(k).[3]  Appellate decisions interpreting this

statutory scheme have concluded that "sufficiently outweighs," rather than "beyond a reasonable

doubt," is the correct standard sentencing juries should apply in the final determination of

sentence.  United States v. Flores, 63 F.3d 1342, 1376 (5th Cir. 1995); United States v. Chandler,

996 F.2d 1073, 1091-92 (11th Cir. 1993).

Moreover, Defendant's claims under Ring are foreclosed by recent decisions from the

Circuit Courts of Appeals, which have upheld the FDPA and rejected similar or identical

challenges to the "substantially outweighs" language.  United States v. Mitchell, 502 F.3d 931,

993-94 (9th Cir. 2007); United States v. Sampson, 486 F.3d 13, 31-33 (1st Cir. 2007); United

States v. Fields, 483 F.3d 313, 345-46 (5th Cir. 2007).

### C.    The Federal Death Penalty Act Does Not Lack a Principled Basis for Distinguishing Cases in Which the Death Penalty is Sought from Those in Which it is Not

Defendant next argues that the FDPA is unconstitutional because "there is little

consistency or predictability in the manner in which federal juries (and in two cases, federal

judges) have imposed, or not, the federal death penalty." (Doc. No. 1347 at 10.)  Differences in

the outcome of death penalty cases does not indicate a constitutional defect in the penalty statute,

as long as the statutory procedures adequately channel the sentencer's discretion.  McCleskey v.

Kemp, 481 U.S. 279, 306-08 (1987).  Defendant's sentence will be ultimately decided under the

FDPA, which rationally narrows the class of death-eligible defendants, and permits a reasoned,

---

[3]      In 2006, Congress repealed the death penalty provisions of 21 U.S.C. § 848, see
Pub. L. No. 109-177, §221(2), 120 Stat. 231, 231 (2006), effectively rendering the FDPA
applicable to all federal death-eligible offenses.  See United States v. Stitt, 552 F.3d 345, 352
(4th Cir. 2008); United States v. Barrett, 496 F.3d 1079, 1106 (10th Cir. 2007).

individualized sentencing determination based on a death-eligible defendant's record, personal

characteristics, and the circumstances of the defendant's crime as required by the Supreme Court.

Although there may be inconsistency in the outcome of certain cases, this does not mean that the

FDPA is unconstitutional.  As the Court in McCleskey explained:

> The Constitution is not offended by inconsistency in results based on the
> objective circumstances of the crime.  Numerous legitimate factors may
> influence the outcome of a trial and a defendant's ultimate sentence, even
> though they may be irrelevant to his actual guilt.  If sufficient evidence to
> link a suspect to the crime cannot be found, he will not be charged.  The
> capability of the responsible law enforcement agency can vary widely.
> Also, the strength of the available evidence remains variable throughout the
> criminal justice process and may influence a prosecutor's decision to offer
> a plea bargain or to go to trial.  Witness availability, credibility, and
> memory also influence the results of prosecutions.  Finally, sentencing in
> state courts is generally discretionary, so a defendant's ultimate sentence
> necessarily will vary according to the judgment of the sentencing authority.
> The forgoing factors necessarily exist in varying degrees throughout our
> c r i m i n a l     j u s t i c e     s y s t e m .

481 U.S. at 307 n.28.

In addition, the Supreme Court and other federal courts have, over and over, rejected

identical arguments made by other capital defendants.  See e.g., McCleskey v. Kemp, 481 U.S.

279, 306-07 (1987) (holding that defendant cannot prove constitutional violation by

demonstrating that other similarly situated defendants did or did not receive the death penalty);

United States v. Sampson, 486 F.3d 13, 24-25 (1st Cir. 2007) (holding that case summaries are

"wholly inadequate to prove that the death penalty has been imposed in an arbitrary manner"

because they are "devoid of details and fail to account for the objective circumstances of the

underlying crimes."); United States v. Barnes, 532 F. Supp. 2d 625, 632-34 (S.D.N.Y. 2008)

(holding that arguments premised upon case summaries are "not supported by the case law");

United States v. Taylor, No. 04-160, 2008 WL 217115, at *4-5 (E.D. Tenn. Jan. 24, 2008) (holding defendant has not shown that the FDPA violates the constitutional requirement of fair and consistent sentencing proceedings); United States v. Solomon, No. 05-385, 2007 WL 1468794, at *2 (W.D. Pa. May 14, 2007) (refusing to find Eighth Amendment violation where case law does not support defendant's view); United States v. James, No. 02-0778, 2007 WL 914249, at *4-5 (E.D.N.Y. Mar. 24, 2007) (finding that the FDPA provides a principled basis for seeking the death penalty).

### D. The Federal Death Penalty Act Does Not Violate the Evolving "Standards of Decency" Under the Eighth Amendment

Defendant argues that the FDPA should be declared unconstitutional because it violates evolving standards of decency in violation of the Eighth Amendment.  (Doc. No. 1347 at 13-15.) In support of this argument, he relies on the fact that in the 20 years since the FDPA was passed, several legislatures have imposed moratoriums on the death penalty and juries have sentenced capital defendants to life without parole.  (Id. at 14.)

"[T]he Eighth Amendment's prohibition of cruel and unusual punishments draws its meaning from the evolving standards of decency that mark the progress of a maturing society." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (internal citations omitted).  In Gregg v Georgia, 428 U.S. 153 (1976), the Supreme Court rejected the argument that the death penalty violates "standards of decency," finding that "a large proportion of American society continues to regard it as an appropriate and necessary criminal sanction." 428 U.S. at 179.  Relying on the Supreme Court's holding in Gregg, the Second Circuit in United States v. Quinones, 313 F.3d 49 (2d Cir. 2002), foreclosed the argument that the death penalty is unconstitutional based on "evolving

-10-

standards," finding that "to the extent our standards of decency have evolved since the enactment of the Constitution, they still permit punishment by death for certain heinous crimes such as murder." 313 F.3d at 61-62. Accordingly, this Court is not persuaded that the FDPA should be declared unconstitutional because it violates evolving standards of decency.

### E. The Federal Death Penalty Act Does Not Violate the Fifth and Eighth Amendments

In support of his argument that the FDPA violates the Fifth and Eighth Amendments, Defendant Hammer once again argues that the modern system of capital punishment is brutally arbitrary and that the FDPA should be declared unconstitutional on its face. (Doc. No. 1347 at 15-18.) However, he provides no additional basis for declaring the FDPA unconstitutional. Therefore, for reasons already discussed in this Opinion, this argument is without merit.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the Motion to Declare the Federal Death Penalty Act Unconstitutional. (Doc. No. 1343.)

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| | : | NO. 96-239 |
| v. | : | |
| | : | |
| DAVID PAUL HAMMER, | : | |
| | : | |
| Defendant. | : | |

### ORDER

**AND NOW**, this 1st day of December 2011, upon consideration of Defendant's

Motion to Declare the Federal Death Penalty Act Unconstitutional (Doc. No. 1343),

Government's Brief in Opposition (Doc. No. 1360), and Defendant's Reply Brief (Doc. No.

1371), and in accordance with the Opinion of this Court dated December 1, 2011, it is

**ORDERED** that Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional

(Doc. No. 1343) is **DENIED**.

BY THE COURT:

_Joel Slomsky_
JOEL H. SLOMSKY, J.