IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,  :
                            :
                            :          NO. 4:96-CR-239
        v.                  :
                            :
DAVID PAUL HAMMER           :
        Defendant.          :

## OPINION

Slomsky, J.                                    December 1, 2011

## I.    INTRODUCTION

Before the Court is Defendant David Paul Hammer's Motion to Strike the Non-Statutory

Aggravating Factor of Future Dangerousness.  (Doc. No. 1340.)  For reasons that follow, the

Court will deny the Motion.[1]

## II.    BACKGROUND INFORMATION

On September 18, 1996, a Grand Jury returned an indictment against Defendant David

Paul Hammer.  (Doc. No. 1.)  He was charged with killing Andrew Marti on April 13, 1996 at

the Allenwood Federal Correctional Complex in White Deer, Pennsylvania, in violation of 18

U.S.C. § 1111.  (Id.)  On April 9, 1997, the Government filed a notice of intent to seek the death

penalty.  (Doc. No. 93.)

Trial began on June 2, 1998, following jury selection for both the guilt and penalty phases

of the case.  (Doc. Nos. 448, 489-503.)  Trial continued until June 22, 1998.  (Id.)  On June 22,

---

[1]     The Court has considered the following documents in deciding the Motion to
Strike the Non-Statutory Aggravating Factor of Future Dangerousness:  Defendant's Motion and
Brief in Support thereof (Doc. Nos. 1340, 1344), Government's Brief in Opposition to
Defendant's Motion (Doc. No. 1356), Defendant's Reply Brief (Doc. No. 1367), and Defendant's
Post-Argument Brief (Doc. No. 1387).

1998, after fourteen days of trial, Defendant Hammer withdrew his plea of not guilty and entered a plea of guilty, admitting that he killed Andrew Marti with premeditation and malice aforethought.  (Doc. No. 504.)  The late Judge Malcolm Muir presided over the trial and penalty phase hearing and continued as the judge assigned to this case until it was transferred on January 12, 2011 to the undersigned judge.  (Doc. No. 1301.)

On June 30, 1998, a hearing commenced to determine whether the death penalty should be imposed, in accordance with 18 U.S.C. § 3593(b).  (Doc. No. 553.)  The hearing continued until July 20, 1998.  On July 21, 22 and 23, 1998, counsel presented closing arguments.  (Doc. Nos. 565-567.)  On July 23, 1998, the jury began deliberating and on July 24, 1998 returned a verdict that the death penalty should be imposed.  (Doc. No. 572.)  On November 4, 1998, after denying motions for a new trial, Judge Muir imposed the death penalty.  (Doc. No. 648.)

Defendant Hammer filed a Notice of Appeal to the Third Circuit Court of Appeals on November 12, 1998.  (Doc. No. 651.)  Thereafter, the Third Circuit granted Defendant's motion for voluntary dismissal of his direct appeal, United States v. Hammer, 226 F.3d 229 (3d Cir. 2000), *cert. denied*, 532 U.S. 959 (2001), and also denied a petition seeking reinstatement of the appeal.  See United States v. Hammer, 239 F.3d 302 (3d Cir. 2001), *cert. denied*, 534 U.S. 831 (2001).

On March 29, 2002, Defendant filed a habeas corpus petition pursuant to 28 U.S.C. § 2255.  (Doc. No. 767.)  Judge Muir held an evidentiary hearing on July 14, 2005 that continued intermittently until September 29, 2005.  In an opinion dated December 27, 2005, Judge Muir denied Hammer's request to withdraw his guilty plea, but granted him a new penalty phase hearing.  United States v. Hammer, 404 F. Supp. 2d 676, 800-01 (M.D. Pa. 2005).  This decision

was essentially based on the Government's failure to disclose material information Defendant

was entitled to receive under Brady v. Maryland, 373 U.S. 83 (1963). Hammer, 404 F. Supp. 2d

at 801. On July 9, 2009, Judge Muir ordered the Government to file a motion to have this case

placed on a trial list for a new penalty phase hearing within sixty days. (Doc. No. 1245.)

After being awarded a new penalty phase hearing, Defendant Hammer submitted a

request to the Department of Justice to reconsider its decision to seek the death penalty. A

review of the case was conducted by the Department of Justice. (Doc. Nos. 1289, 1293, 1297,

1300.) The review concluded on January 6, 2011 when Attorney General Eric Holder authorized

the prosecution to seek the death penalty against Defendant Hammer. (Doc. No. 1300.) On

January 7, 2011, the United States Attorney filed a motion requesting that the case be placed on

the trial list for a new penalty proceeding. (Id.)

Defendant's attorneys then filed a series of motions and supporting briefs. (Doc. Nos.

1326-1347.) This Opinion addresses the Motion filed on May 19, 2011, in which Defendant

requests that the non-statutory aggravating factor of future dangerousness set forth in the

Government's notice of intent to seek the death penalty be stricken from the notice, or in the

alternative, that the Court schedule an evidentiary hearing regarding this factor. (Doc. Nos. 1340,

1344.) On June 17, 2011, the Government filed a brief in opposition. (Doc. No. 1356.) On June

30, 2011 oral argument was held on all outstanding motions. (Doc. Nos. 1378, 1379.) On July

26, 2011, both parties submitted post-argument briefs. (Doc. Nos. 1386, 1387.)

## III.   DISCUSSION

Defendant Hammer raises several constitutional and statutory claims regarding the

statutory aggravating factor of future dangerousness: (1) the statutory language of the Federal

Death Penalty Act ("FDPA") does not authorize the utilization of non-statutory aggravating factors; (2) the non-statutory aggravating factor of future dangerousness does not limit and guide the discretion of the jury, permitting wholly arbitrary and capricious death sentences in violation of the Eighth and Fourteenth Amendments; and (3) permitting the Department of Justice to define non-statutory aggravating circumstances violates *ex post facto* laws.  (Doc. No. 1344 at 9-13.)

Defendant also argues that the probative value of the evidence that the Government has outlined in support of the non-statutory factor of future dangerousness in its Notice of Intent to Seek the Death Penalty is outweighed by its potential for prejudice.  (Doc. No. 1344 at 1-9.)  In this regard, the Court has ordered the Government to provide Defendant with an Informational Outline of the information it plans to introduce in support of this aggravating factor.  (Doc. No. 1411.)  Defendant should review this information and determine whether he still wishes to pursue a balancing test challenge.  If so, an appropriate motion may be filed and the Court will determine whether an evidentiary hearing is necessary.  Therefore, the Court will not rule on whether an evidentiary hearing is necessary until this information is provided.

### A.    The Use of Non-Statutory Factors is Authorized Under the Federal Death Penalty Act

Defendant Hammer contends that the use of non-statutory aggravating factors is not authorized by the Federal Death Penalty Act ("FDPA"), because the language authorizing the factors in 18 U.S.C. § 3592(c) contradicts language in § 3591(a).  (Doc. No. 1344 at 9-10.)

18 U.S.C. § 3591(a) states that a defendant may be sentenced to death only after a jury considers "the factors set forth in section 3592," which lists 16 statutory aggravating factors.

-4-

Section 3592(c) contains the statutory aggravating factors and provides at the end: "[t]he jury, or

if there is no jury, the court, may consider whether any other aggravating factor for which notice

has been given exists." 18 U.S.C. § 3592(c).  Moreover, § 3593(a), which concerns the notice

the government must provide a defendant of the aggravating factor or factors that the government

proposes to prove to justify a sentence of death, provides as follows:

> The factors for which notice is provided under this subsection may include
> factors concerning the effect of the offense on the victim and the victim's
> family, and may include oral testimony, a victim impact statement that
> identifies the victim of the offense and the extent and scope of the injury
> and loss suffered by the victim and the victim's family, and any other
> relevant information. The court may permit the attorney for the government
> to   amend   the   notice   upon   a   showing   of   good   cause.

18 U.S.C. § 3593(a).

Defendant's attorneys acknowledge that the argument that non-statutory aggravating

factors are not authorized by the FDPA was considered and rejected in United States v. Nguyen,

928 F. Supp. 1525 (D. Kan. 1996), but urges the Court to reject the Nguyen court's reasoning.

(Doc. No. 1344 at 10.)

In Nguyen, the court held that "[a] statute should be construed, if possible, in such a way

that all of its provisions can be given effect, and so that no part of the statute is rendered

inoperative or superfluous.  [Defendant's] strained and hyper-literal reading of § 3591(a) would

render large portions of § 3592 inoperative." 928 F. Supp. at 1536 (internal citations omitted).

This reasoning has been adopted by and elaborated on by a number of other courts.  In United

States v. Llera Plaza, 179 F. Supp. 2d 444 (E.D. Pa. 2001), the court discussed the reasoning in

Nguyen and after carefully considering the "entire fabric of the FDPA" concluded:

> Consistency therefore demands that in reading § 3591(a), the phrase "the

factors set forth in section 3592" must be taken to comprehend only statutory aggravating factors. However, this is not to say that the defendants are correct that § 3591(a) undermines the government's authority, under the catch-all sentence of § 3592(c), to articulate and attempt to establish non-statutory aggravating factors.   To reiterate, § 3591(a) authorizes the sentencer to impose the death penalty if it finds such a sentence justified "after consideration of the factors set forth in section 3592." Section 3591(a) thus affirmatively directs the sentencer to include statutory factors in its calculus; however, it does not prohibit the sentencer from including non-statutory aggravating factors as well – or, for that matter, mitigating factors. Simply because consideration of one type of factor is mandated does not mean that consideration of other types of factors is precluded.

To construe § 3591(a) so narrowly as to nullify the catch-all sentence of § 3592(c) authorizing the use of non-statutory aggravating factors would violate the longstanding cannon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute m e a n i n g l e s s   o r   s u p e r f l u o u s .

179 F. Supp. 2d at 459 (internal quotations omitted).   Several other courts have rejected Defendant's argument on similar grounds, adopting the reasoning set forth in Nguyen and Llera Plaza.   See United States v. Robinson, 367 F.3d 278, 293 (5th Cir. 2004), cert. denied, 543 U.S. 1005 (2004); United States v. Cheever, 423 F. Supp. 2d 1181, 1208-09 (D. Kan. 2006); United States v. Le, 327 F. Supp. 2d 601, 614 (E.D. Va. 2004); United States v. Mikos, No. 02-137-1, 2003 WL 22110948, at *24-25 (N.D. Ill. Sept. 11, 2003).   Defendant Hammer cites no case law to contradict the reasoning of these courts. Therefore, the Court finds no merit in Defendant's argument.

### B.     The Non-Statutory Factor of Future Dangerousness Properly Guides the Discretion of the Jury

Defendant Hammer argues that non-statutory aggravating factors do not limit and guide the discretion of the jury, therefore permitting arbitrary and capricious death sentences in

violation of the Eighth and Fourteenth Amendments. (Doc. No. 1344 at 10-12.) He contends

that 18 U.S.C. § 3592(c) "authoriz[es] the government to unilaterally expand the list of

aggravating factors on a case-by-case basis inject[ing] into capital proceedings precisely the

uncertainty and disparate case results that Furman found to violate the Eighth Amendment." (Id.

at 11.) See Furman v. Georgia, 408 U.S. 238 (1972).

When discretion is given to a sentencing body "on a matter so grave as the determination

of whether a human life should be taken or spared, that discretion must be suitably directed and

limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia,

428 U.S. 153, 189 (1976). In order to properly guide the discretion of the jury, a capital

sentencing system must: (1) rationally narrow the class of death-eligible defendants, and (2)

permit a jury to render a reasoned, individualized sentencing determination based on a death

eligible defendant's record, personal characteristics, and the circumstances of the crime. Kansas

v. Marsh, 548 U.S. 163, 173-74 (2006); Gregg, 428 U.S. at 189 ("We have long recognized that

'for the determination of sentences, justice generally requires . . . that there be taken into account

the circumstances of the offense together with the character and propensities of the offender.'")

(citing Pennsylvania ex rel. Sullivan v. Ashe, 302 U.S. 51, 55 (1937)).

Permitting the jury to consider statutory, as well as non-statutory aggravating factors,

allows them to render a reasoned, individualized sentencing determination based on a death

eligible defendant's record, personal characteristics and the circumstances of the crime. United

States v. Glover, 43 F. Supp. 2d 1217, 1228-29 (D. Kan. 1999); United States v. Kaczynski, No.

96-259, 1997 WL 34626785, at *4 (E.D. Cal. Nov. 7, 1997). This approach is consistent with

the Supreme Court's direction that the sentencing decision should be an "individualized

determination on the basis of the character of the individual and the circumstances of the crime." Zant v. Stephens, 462 U.S. 862, 879 (1983).  Consideration of non-statutory aggravating factors becomes relevant only after the jury finds the requisite intent and at least one statutory aggravating factor, a process which narrows the class of defendants eligible to receive the death penalty.  United States v. Solomon, 513 F. Supp. 2d 520, 534 (W.D. Pa. 2007).  Therefore, the statute properly guides the discretion of the jury and avoids the arbitrary and capricious imposition of death sentences.

Contrary to Defendant's argument, the government's discretion to argue non-statutory aggravating factors is limited.  The statute requires that a defendant is given notice of any non-statutory aggravating factors that will be argued at the sentencing proceeding.  See 18 U.S.C. § 3593(a) (requiring the government to provide the defendant with notice "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.").  Moreover, the government cannot rely solely on non-statutory aggravating factors in arguing for the imposition of the death penalty.  Kaczynski, 1997 WL 34626785, at *4.  The information presented to establish such factors must be relevant and may be excluded if its probative value is outweighed by prejudice.  18 U.S.C. § 3593(c).  Judicial review of all proposed aggravating factors will ensure that they comply with the mandates of the statute and the Constitution.  United States v. Solomon, 513 F. Supp. 2d 520, 533-34 (W.D. Pa. 2007).

In this case, the Court has ordered that the Government provide Defendant with an outline of the information it plans to introduce at trial in support of the non-statutory aggravating factor of future dangerousness.  (Doc. No. 1411.)  As noted above, upon appropriate motion, the

relevance and/or prejudicial nature of the evidence may be considered by the Court along with the constitutionality of any proposed non-statutory aggravating factor. United States v. Pretlow, 779 F.Supp. 758, 767-68 (D.N.J. 1991). A hearing may be ordered, if deemed necessary by the Court.

Accordingly, the use of pertinent non-statutory factors does not result in the imposition of arbitrary and capricious death sentences. Defendant's position that non-statutory factors are not admissible under the FDPA has been rejected by a number of courts. See United States v. Gooch, No. 04-128-23, 2006 WL 3780781, at *11 (D.D.C. Dec. 20, 2006); United States v. Cooper, 91 F. Supp. 2d 90, 100 (D.D.C. 2000); United States v. Glover 43 F. Supp. 2d 1217, 1228-29 (D. Kan. 1999); United States v. Kaczynski, No. 96-259, 1997 WL 34626785, at *4 (E.D. Cal. Nov. 7, 1997).

### C.    The Use of Non-Statutory Aggravating Factors Does Not Violate the Ban on *Ex Post Facto* Laws

Under the FDPA, the government must decide before trial on the non-statutory aggravating factors that will be offered at the death penalty hearing and provide them to a defendant in the Notice of Intent to Seek the Death Penalty. 18 U.S.C. § 3593(a). Defendant argues that this process violates Article I, § 9, clause 3 of the United States Constitution, which provides that: "No . . . ex post facto law shall be passed." (Doc. No. 1344 at 12-13.) This Constitutional clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504-05 (1995) (quoting Collins v. Youngblood, 497 U.S. 37, 43 (1990)). In United States v. Llera Plaza, 179 F. Supp. 2d 444 (E.D. Pa. 2001), the court noted that:

> Non-statutory aggravating factors operate in a way that could indeed be considered 'retroactive,' in the sense that they have been formulated subsequent to the defendant's crime.  However, they neither 'alter the definition' of the defendant's crime, nor do they 'increase the punishment' for his or her criminal act.  Entirely separate statutory provisions define the crimes alleged, and entirely separate statutory provisions establish the possible range of punishments for those crimes.

179 F. Supp. 2d at 455-56.  In this case, 18 U.S.C. § 1111 defines the applicable crime and range of punishment for the offense of murder.  The consideration of non-statutory aggravating factors does not increase the punishment nor alter the elements of the underlying offense.  United States v. Allen, 247 F.3d 741, 759 (8th Cir. 2001), *vacated and remanded on other grounds*, 536 U.S. 584 (2002); United States v. Minerd, 176 F. Supp. 2d 424, 433-34 (W.D. Pa. 2001).  Non-statutory aggravating factors provide an individualized determination regarding whether the death penalty should be imposed *after* the defendant has been found eligible for the death penalty.  Allen, 247 F.3d at 759 (rejecting *ex post facto* argument because the non-statutory aggravating factors are not used to determine *eligibility* for the death penalty).

Consequently, the use of non-statutory factors as permitted by the FDPA does not implicate the *ex post facto* clause.  Allen, 247 F.3d at 759, n.5 ("[W]e do not think that non[-]statutory aggravating factors under the FDPA can ever be viewed as subjecting a defendant to increased punishment because they only come into play during the jury's selection, as opposed to its eligibility, determination."); Minerd, 176 F. Supp. 2d at 433-34 (permitting the government to assert non-statutory aggravating factors does not trigger *ex post facto* concerns).

IV.     **CONCLUSION**

For the foregoing reasons, the Court will deny the Motion to Strike the Non-Statutory

Aggravating Factor of Future Dangerousness.  (Doc. No. 1340.)

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,       :     CRIMINAL ACTION
:
:     NO. 96-239
v.          :
:
DAVID PAUL HAMMER,     :
:
Defendant.     :

**ORDER**

     **AND NOW**, this 1st day of December 2011, upon consideration of Defendant's Motion to Strike the Non-Statutory Aggravating Factor of Future Dangerousness (Doc. No. 1340), Government's Brief in Opposition (Doc. No. 1356), Defendant's Reply Brief (Doc. No. 1367), and Defendant's Post-Argument Brief (Doc. No. 1387), and in accordance with the Opinion of this Court dated December 1, 2011, it is **ORDERED** that Defendant's Motion to Strike the Non-Statutory Aggravating Factor of Future Dangerousness (Doc. No. 1340) is **DENIED**.

BY THE COURT:

*Joel Slomsky*
JOEL H. SLOMSKY, J.