IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| | : NO. 4:96-CR-239 |
| v. | : |
| | : |
| DAVID PAUL HAMMER | : |
| Defendant. | : |

## OPINION

**Slomsky, J.**                                                                                   **December 8, 2011**

### I.   INTRODUCTION

Before the Court is Defendant David Paul Hammer's Motion to Bar Capital Prosecution Because the Government Failed to Indict on Either the Statutory Intent Factors or Statutory Aggravating Factors. (Doc. No. 1332.) For reasons that follow, the Court will deny the Motion.[1]

### II.  BACKGROUND INFORMATION

On September 18, 1996, a Grand Jury returned an indictment against Defendant David Paul Hammer. (Doc. No. 1.) The Indictment charged that Defendant:

> [Count One] with premeditation and malice aforethought, did kill Andrew J. Marti, by strangling him with a cloth cord or homemade garrote. In violation of Title 18, United States Code, Sections 7(3) and 1111. . . . [Count Two] while confined in . . . [the Allenwood Federal Correctional Complex, United States Penitentiary, White Deer, Lycoming County,

---

[1] The Court has considered the following documents in deciding the Motion to Bar Capital Prosecution Because the Government Failed to Indict on Either the Statutory Intent Factors or Statutory Aggravating Factors: Defendant's Motion and Brief in Support thereof (Doc. Nos. 1332, 1333), Government's Brief in Opposition to Defendant's Motion (Doc. No. 1357), Defendant's Reply Brief (Doc. No. 1366), and Defendant's Post-Argument Brief (Doc. No. 1387).

Pennsylvania] under a sentence for an effective term of life imprisonment[2] with premeditation and malice aforethought, did kill Andrew J. Marti, by strangling him with a cloth cord or homemade garrote. In violation of Title 18, United States Code, Sections 7(3); 1118; and 5003(c).

(Id.)[3] On April 9, 1997, the Government filed a notice of intent to seek the death penalty. (Doc. No. 93.)

Trial began on June 2, 1998, following jury selection for both the guilt and penalty phases of the case. (Doc. Nos. 448, 489-503.) Trial continued until June 22, 1998. (Id.) On June 22, 1998, after fourteen days of trial, Defendant Hammer withdrew his plea of not guilty and entered a plea of guilty, admitting that he killed Andrew Marti with premeditation and malice aforethought. (Doc. No. 504.) The late Judge Malcolm Muir presided over the trial and penalty phase hearing and continued as the judge assigned to this case until it was transferred on January 12, 2011 to the undersigned judge. (Doc. No. 1301.)

On June 30, 1998, a hearing commenced to determine whether the death penalty should be imposed, in accordance with 18 U.S.C. § 3593(b). (Doc. No. 553.) The hearing continued until July 20, 1998. On July 21, 22 and 23, 1998, counsel presented closing arguments. (Doc. Nos. 565-567.) On July 23, 1998, the jury began deliberating and on July 24, 1998, returned a verdict that the death penalty should be imposed. (Doc. No. 572.) On November 4, 1998, after

---

[2] Defendant was serving a sentence of approximately 1200 years, which the Indictment deemed an "effective term of life imprisonment[.]" (Doc. No. 1 at 2.) The Government moved to dismiss Count II in part because 1200 years may not, in fact, have been the equivalent of "life imprisonment" under state or federal law. (Doc. No. 97.)

[3] On April 25, 1997, the court granted the Government's Motion to Dismiss Count II of the Indictment. (Doc. No. 98.) The Government sought dismissal of Count II because "under either count of the Indictment, Defendant face[d] the possibility of a sentence of death, to simplify issues at trial," and because equating a 1200-year sentence to an "effective term of life imprisonment" may be legally inaccurate. (Doc. No. 97 at 1.)

denying motions for a new trial, Judge Muir imposed the death penalty. (Doc. No. 648.)

Defendant Hammer filed a Notice of Appeal to the Third Circuit Court of Appeals on November 12, 1998. (Doc. No. 651.) Thereafter, the Third Circuit granted Defendant's motion for voluntary dismissal of his direct appeal. United States v. Hammer, 226 F.3d 229 (3d Cir. 2000), *cert. denied*, 532 U.S. 959 (2001). The Third Circuit summarized the three-year history of Defendant's filings as follows:

> On November 27, 1998, Hammer filed a pro se motion to dismiss the appeal but on December 18, 1998, he filed an application to withdraw that motion which [was] granted on December 30, 1998. On March 23, 1999, Hammer again filed a motion to dismiss the appeal and by order of April 16, 1999, [the Third Circuit] reserved decision on the motion. Then on July 23, 1999, stand-by counsel on behalf of Hammer filed a motion to withdraw the motion to dismiss the appeal. On August 3, 1999, [the Third Circuit] granted the motion to withdraw the motion to dismiss the appeal and thus the case proceeded to the briefing stage. . . . [O]n May 8, 2000, [Hammer] filed a pro se motion for immediate dismissal of his appeal. By [court] order dated May 11, 2000, [the Third Circuit] reserved decision on the motion. Subsequently, Hammer sought reconsideration of [the] May 11 order and unsuccessfully sought en banc consideration of his motion to dismiss. . . . On June 30, 2000, Hammer filed a motion requesting that [the Court] deem that he had withdrawn his May 8, 2000, motion to dismiss the appeal or that [the Court] dismiss the motion to dismiss the appeal. . . . Then, in the final significant pre-argument development, [the Third Circuit] received a letter dated July 11, 2000, on July 13, 2000, from Hammer that once again stated that he wanted the appeal dismissed. In the letter, after setting forth certain background information, Hammer recited the following: Therefore, I urge this court to decide my Pro se Motion to have my appeal dismissed and not to consider the issue moot. My only desire is to have the sentence of death implemented expeditiously, and whatever process or procedure that achieves this result fastest is what I feel is best.

Hammer, 226 F.3d at 231-32. The Third Circuit later denied a petition seeking reinstatement of the appeal. See United States v. Hammer, 239 F.3d 302 (3d Cir. 2001), *cert. denied*, 534 U.S. 831 (2001).

On March 29, 2002, Defendant filed a habeas corpus petition pursuant to 28 U.S.C. § 2255. (Doc. No. 767.) Judge Muir held an evidentiary hearing on July 14, 2005 that continued intermittently until September 29, 2005. In an opinion dated December 27, 2005, Judge Muir denied Hammer's request to withdraw his guilty plea, but granted him a new penalty phase hearing. United States v. Hammer, 404 F. Supp. 2d 676, 800-01 (M.D. Pa. 2005). This decision was essentially based on the Government's failure to disclose material information Defendant was entitled to receive under Brady v. Maryland, 373 U.S. 83 (1963). Hammer, 404 F. Supp. 2d at 801. Specifically, Judge Muir found that "[t]he Government . . . failed to disclose evidence from third parties regarding Mr. Hammer's history of engaging in sexual bondage, including evidence that in the past he had braided sheets into ropes to be used in consensual aberrant sexual activity." 404 F. Supp. 2d at 799. According to Judge Muir, this evidence of Hammer's history of engaging in sexual bondage was directly relevant to the factors of substantial planning and premeditation. Id. Because Hammer withdrew his direct appeal, these evidentiary objections had not yet been reviewed. "When a defendant does not pursue an appeal, generally any issues that could have been raised on appeal are waived and cannot be raised in a § 2255 proceeding." Id. at 800. However, in light of the Government's Brady violations, the court held that precluding Hammer from raising these objections "would result in a miscarriage of justice or manifest injustice." Id. On July 9, 2009, Judge Muir ordered the Government to file a motion to have this case placed on a trial list for a new penalty phase hearing within sixty days. (Doc. No. 1245.)

After being awarded a new penalty phase hearing, Defendant Hammer submitted a request to the Department of Justice to reconsider its decision to seek the death penalty. A

review of the case was conducted by the Department of Justice. (Doc. Nos. 1289, 1293, 1297, 1300.) The review concluded on January 6, 2011 when Attorney General Eric Holder authorized the prosecution to seek the death penalty against Defendant Hammer. (Doc. No. 1300.) On January 7, 2011, the United States Attorney filed a motion requesting that the case be placed on the trial list for a new penalty proceeding. (Id.)

Defendant's attorneys then filed a series of motions and supporting briefs. (Doc. Nos. 1326-1347.) This Opinion addresses the Motion filed on May 19, 2011, in which Defendant moves to bar the capital prosecution because the Government failed to indict on either the statutory intent factors or statutory aggravating factors. (Doc. No. 1332.) On June 17, 2011, the Government filed its brief in opposition. (Doc. No. 1357.) On June 30, 2011, oral argument was held on all outstanding motions. (Doc. Nos. 1378-79.) On July 26, 2011, both parties submitted post-argument briefs. (Doc. Nos. 1386-87.)

## III. DISCUSSION

Defendant Hammer argues that the Government failed to submit either the statutory intent factors or the statutory aggravating factors to the Grand Jury, and as a result permitting the Government to proceed with capital prosecution in the re-sentencing hearing would violate Defendant's Fifth Amendment rights. (Doc. No. 1333.) Defendant contends that under the Indictment Clause of the Fifth Amendment, the failure of the Indictment to specify at the very least a statutory intent and a statutory aggravating factor constitutes a *per se* Fifth Amendment violation which requires the court to dismiss the capital prosecution. (Id. at 9.) Specifically, Defendant argues that the Government's failure to include either the *mens rea* eligibility requirement or a statutory aggravating factor in the Indictment deprived him of his Fifth

Amendment right to have the Grand Jury determine whether there was sufficient probable cause to return a capital murder charge. (Id. at 5-6.)

The Supreme Court has held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). In Jones v. United States, 526 U.S. 227 (1999), the Supreme Court held that "any fact (other than [a] prior conviction) that increases the maximum penalty for a crime must be charged in [the] indictment. . . ." 526 U.S. at 243 n.6. In Ring v. Arizona, 536 U.S. 584 (2002), the Supreme Court addressed the Jones rule in the capital punishment context and confirmed that "an aggravating circumstance necessary for the imposition of the death penalty . . . operate[s] as 'the functional equivalent of an element of a greater offense,' [and therefore] the Sixth Amendment requires that they be found by a jury." 536 U.S. at 609 (quoting Apprendi v. New Jersey, 530 U.S. 466, 494 n.19 (2000)). The Circuit Courts of Appeal are in agreement that in a death penalty case, Ring mandates that "at least one statutory aggravating factor, which is necessary to elevate the maximum sentence from life imprisonment to death, must be charged in the indictment." United States v. Brown, 441 F.3d 1330, 1367 (8th Cir. 2006); see United States v. Allen., 406 F.3d 940, 942-43 (8th Cir. 2005) (en banc) (concluding that the Fifth Amendment requires the *mens rea* requirement and at least one statutory aggravating factor to be found by the grand jury and charged in the indictment); United States v. Robinson, 367 F.3d 278, 284 (5th Cir. 2004) ("the government is required to charge, by indictment, the statutory aggravating factors it intends to prove to render a defendant eligible for the death penalty"); United States v. Higgs, 353 F.3d 281,

297-98 (4th Cir. 2003) (holding that the intent and aggravating factors that render a defendant death-eligible under the FDPA must be charged in the indictment).

In the federal system, in order to return a sentence of death for a defendant who has been convicted of homicide, a jury must find the presence of at least one statutory intent factor under 18 U.S.C. § 3591(a)(2) and one statutory aggravating factor under 18 U.S.C. § 3592(c). 18 U.S.C. § 3593(e)(2). The statutory intent factor may be satisfied by a finding that the defendant intentionally killed the victim or intentionally subjected the victim to severe bodily harm which resulted in death. 18 U.S.C. § 3591(a)(2). Sixteen statutory aggravating factors are set forth in section 3592(c), including prior convictions and "[s]ubstantial planning and premeditation." 18 U.S.C. § 3592(c). Hammer argues that, under Jones and Ring, the Indictment in this case was insufficient as a matter of law because it did not charge any fact constituting a statutory intent factor or a statutory aggravating factor, both of which are necessary to impose the death penalty. (Doc. No. 1333.)

For reasons that follow, Defendant's arguments are without merit.

## A. RING DOES NOT APPLY RETROACTIVELY IN THIS CASE

In Schriro v. Summerlin, 542 U.S. 348 (2004), the Supreme Court held that the Ring rule "does not apply retroactively to cases already final on direct review." 542 U.S. at 358. The defendant in Schriro was convicted of first-degree murder and sexual assault in Arizona state court. Id. at 350. In accordance with Arizona's capital sentencing provisions, the trial court judge found the presence of two aggravating factors and no mitigating factors, and consequently sentenced the defendant to death. Id. After the Arizona Supreme Court affirmed the sentence on direct review, the defendant filed a petition seeking habeas review of his conviction. Id. While

that review was pending in the Ninth Circuit, the Supreme Court decided Ring v. Arizona, 536 U.S. 584 (2002), which required the presence of aggravating factors necessary for capital punishment eligibility to be found by a jury instead of a judge. Schriro, 542 U.S. at 351 (citing Ring, 536 U.S. at 603-09). Relying on Ring, the Ninth Circuit reversed the defendant's death sentence. Schriro, 542 U.S. at 351; see Summerlin v. Stewart, 341 F.3d 1082, 1121 (9th Cir. 2003) (en banc). The Supreme Court reversed the Ninth Circuit, holding that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." Schriro, 542 U.S. at 358. To hold otherwise would invite "criminal defendant[s] [who already] had a full trial and one round of appeals . . . [to] nevertheless continue to litigate [their] claims indefinitely in hopes that we will one day have a change of heart." Id.

Defendant argues that the Ring holding should apply retroactively to his September 18, 1996 Indictment because "[t]here has been no final judgment in [Hammer's] case . . . [and as a result] Hammer is in the same procedural posture [today] as he was in 1998 - pre-sentencing." (Doc. No. 1366 at 3-4.) Hammer contends in essence that direct review of his original sentence never ended and that the Ring holding therefore applies to the Indictment in his case. Defendant's argument is unpersuasive because the current proceeding, involving a new death penalty phase hearing, was awarded after a collateral review and is not a continuation of his direct appeal.

### i. Defendant's Voluntary Dismissal of His Appeal Ended Direct Review

Defendant's current procedural posture is sourced from a collateral review which occurred after he voluntarily dismissed his original appeal to the Third Circuit. United States v. Hammer, 226 F.3d 229 (3d Cir. 2000). The new penalty phase hearing was not awarded on

direct review, but was awarded on collateral review through consideration of Defendant's habeas corpus petition pursuant to 28 U.S.C. § 2255, which was filed after the Third Circuit granted Hammer's voluntary dismissal of his appeal. See United States v. Hammer, 404 F. Supp. 676 (M.D. Pa. 2005).

The Third Circuit has held that a criminal defendant's voluntary dismissal of his appeal from a conviction and sentence constitutes the end of direct review. United States v. Sylvester, 258 F. App'x 411, 412 (3d Cir. 2007). In Sylvester, the Third Circuit considered an appeal of the district court's dismissal of the defendant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. 258 F. App'x at 411. The defendant had previously appealed the sentence imposed upon a guilty plea to drug distribution, but then filed a motion for voluntary dismissal of the appeal which the Third Circuit granted. Id. Subsequently, the defendant filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, which was dismissed by the district court as time-barred because of the one-year statute of limitations. Id. at 411-12. In affirming the district court's dismissal of the habeas petition, the Third Circuit confirmed that the statute of limitations had expired because the defendant's "conviction became final and the limitations period began to run when his appeal was voluntarily dismissed. *When an appeal is voluntarily dismissed, further direct review is no longer possible.*" Sylvester, 258 F. App'x at 412 (emphasis added); see also United States v. Arevalo, 408 F.3d 1233, 1236 (9th Cir. 2005); Futernick v. Sumpter Twp., 207 F.3d 305, 312 (6th Cir. 2000); Barrow v. Falck, 977 F.2d 1100, 1103 (7th Cir. 1992); Williams v. United States, 553 F.2d 420, 422 (5th Cir. 1977). Here, Defendant voluntarily dismissed his direct appeal to the Third Circuit, and in doing so, he precluded any further direct review.

### ii. Habeas Review Is Collateral

In addition, Defendant's current procedural posture is sourced from a collateral review because he has obtained a new penalty phase hearing through a § 2255 habeas motion to vacate his sentence. See United States v. Hammer, 404 F. Supp. 2d 676, 687-91 (M.D. Pa. 2005). As Judge Muir wrote in his opinion granting Defendant a new penalty phase hearing, "[s]ection 2255 provides federal prisoners with the statutory vehicle for *collaterally challenging* the lawfulness of their convictions." Hammer, 404 F. Supp. 2d at 691 (emphasis added).

The federal habeas corpus statute provides federal prisoners with the right to collateral review of their sentence, not a continuation of their direct appeal. Section 2255(a) provides that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, *or is otherwise subject to collateral attack*,[4] may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a) (emphasis added). Similarly, section 2255(b) states that:

> [i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law *or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack*, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(b) (emphasis added). "Habeas corpus always has been a *collateral* remedy,

---

[4] Black's Law Dictionary provides the following definition of "collateral attack": "[a]n attack on a judgment in a proceeding *other than a direct appeal* . . . ." BLACK'S LAW DICTIONARY 298 (9th ed. 2009) (emphasis added). The definition also notes that "[a] petition for a writ of habeas corpus is one type of collateral attack." Id.

providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review." Teague v. Lane, 489 U.S. 288, 306 (1989) (emphasis in original).

Because Defendant's re-sentencing is a product of collateral review, in accordance with the Supreme Court's decision in Schriro v. Summerlin, 542 U.S. 348 (2004), the Ring requirements do not apply retroactively to the Indictment and, consequently, Defendant may not challenge the Indictment as facially insufficient based upon Ring.

### B. THE CLAIMED ERRORS IN THE INDICTMENT ARE HARMLESS

In the alternative, even if Ring applied retroactively to Defendant's Indictment and the wording was insufficient to allege the statutory intent and statutory aggravating factors, the claimed defects in the Indictment do not merit barring capital punishment in Defendant's re-sentencing because those defects were harmless errors. A constitutionally deficient indictment is subject to a harmless error analysis. See Williams v. Haviland, 467 F.3d 527, 535 (6th Cir. 2006); United States v. Allen, 406 F.3d 940, 945 (8th Cir. 2005) (en banc); United States v. Higgs, 353 F.3d 281, 304 (4th Cir. 2003); United States v. Cor-Bon Bullet Co., 287 F.3d 576, 580-81 (6th Cir. 2002).

The test for harmless error is set forth in Rule 52(a) of the Federal Rules of Criminal Procedure: "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." The Supreme Court has held that, in determining whether a constitutional error is harmless, the court must ascertain whether "beyond a reasonable doubt . . . the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967). Stated another way, the inquiry is whether "it [is] clear beyond a reasonable doubt

-11-

that a rational jury would have [reached the same conclusion] absent the error[.]" Neder v. United States, 527 U.S. 1, 18 (1999). Regarding the alleged defects in Defendant's Indictment, the harmless error test requires a determination of "whether any rational grand jury . . . would have found the existence of the requisite mental state and one or more of the statutory aggravating factors . . . if the grand jury had been asked to do so." United States v. Allen, 406 F.3d 940, 945 (8th Cir. 2005) (en banc).

The Grand Jury in this case was presented with ample evidence regarding both the intent and the statutory aggravating factor of "premeditation and substantial planning" as set forth in 18 U.S.C. § 3592(c)(9).[5] Prior to their issuing the Indictment, the Grand Jury heard testimony on July 24, 1996 from Special Agent Anthony S. Malocu ("Agent Malocu") of the Federal Bureau of Investigation ("FBI"). (Doc. No. 1357-2.) Agent Malocu read to the Grand Jury a letter written by Defendant to a fellow inmate named "Rock." (Doc. No. 1357-2 at 15:15-16:15.) In

---

[5] It appears that the prior convictions that render Defendant eligible for the death penalty were submitted to the Grand Jury. The Government's brief notes that "[i]n 1997, [Defendant] complained that it was prejudicial for the prosecution to tell [the Grand Jury] about his prior record of convictions." (Doc. No. 1357 at 7.) 18 U.S.C. § 3592(c)(2) lists as one statutory aggravating factor that "the defendant has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person," and 18 U.S.C. § 3592(c)(4) lists as one statutory aggravating factor that "[t]he defendant has previously been convicted of 2 or more Federal or State offenses, punishable by a term of imprisonment of more than 1 year, committed on difference occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person." Defendant Hammer has prior convictions that come within these provisions. The Court has not found in the record the Grand Jury testimony on Defendant's prior convictions, and if either party wishes to make a more complete record on this point, they may do so.

Moreover, the Court notes that prior convictions are aggravating factors that need not be found by a jury or included in an indictment. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000); Jones v. United States, 526 U.S. 227, 243 n.6 (1999); United States v. Higgs, 353 F.3d 281, 303-04 (4th Cir. 2003).

the letter, Defendant wrote: "'Rock, I did not have any right to take his life,' meaning Marti. 'But the obvious fact is I did so. I will pay for what I have done whether it be by spending years more in prison or with my own life, I will pay. My decision was made after careful thought and consideration.'" (Id. at 16:6-15.) Agent Malocu also testified that Defendant had explicitly admitted to FBI agents the reason he killed Marti: "[H]is reason was that he had a run in with Marti. When Hammer first arrived at USP Allenwood in 1995, he had a run in with Marti, and Marti disrespected him. [Hammer] never forgot it, and that was the reason why he killed him." (Id. at 27:17-20.)

On the same day as Agent Malocu's testimony, the Grand Jury also heard testimony from Defendant's fellow inmate, Leonard Yager. (Doc. No. 1357-3.) Yager testified that Defendant harbored both sexual and homicidal desires towards Marti. (Doc. No. 1357-3 at 11:6-14:4.) When asked whether Defendant was referring to sex with Marti or killing or both, Yager testified that "every time [Hammer] would say sex, but then he would say he was going to kill [Marti] or I am going to hurt him real bad. You know, it was just something like that, but it would always be a kill, you know." (Id. at 16:6-9.)

Finally, on August 28, 1996, the Grand Jury heard testimony from another fellow inmate of Defendant Hammer, Steve Classen. (Doc. No. 1357-4.) Classen was Defendant's cell-mate immediately prior to Marti. (Doc. No. 1357-4 at 6:21-7:10.) When Classen was asked whether he knew why Defendant wanted to be placed in a cell with Marti, Classen responded, "Yeah but at the time I didn't know he was serious. . . . [Hammer] said, 'Yeah, I'm going to kill Marti when he comes down.' And I think it might have been the way I look at [Hammer], like disbelief. And all [Hammer] said was, 'Gotcha.' . . . I don't think [Hammer] liked my reaction and then he

just said 'Gotcha' like it was a joke . . . . I thought [Hammer] was joking, you know, . . . because [otherwise] . . . I would have said something to the [prison] staff because . . . I'm in prison but murder, I don't think murder is right . . . . I think [Hammer] figured I would tell someone so he just said 'Gotcha.'" (Id. at 9:21-11-13.) Classen further testified that several days after Marti's death he received a letter from Defendant in which he admitted to killing Marti. (Id. at 13:23-16:18.) The letter stated, "'Steve, I don't care what you say to the FBI or SIS this isn't anything that can hurt me because their case is pretty open and shut. I'm sure you were surprised to learn that I done what I told you I was going to do with Marti.'" (Id. at 15:20-25.)

Applying the harmless error test to Defendant's Indictment, the evidence presented to the Grand Jury shows beyond a reasonable doubt that the Grand Jury would have charged the intent factor and at least one statutory aggravating factor had they been asked to do so. Federal courts have applied harmless error analyses to allegations of constitutionally defective indictments similar to Defendant's. United States v. Allen, 406 F.3d 940 (8th Cir. 2005) (en banc). In Allen, the defendant Allen had been convicted of murder and sentenced to death by the district court. 406 F.3d at 941. Allen appealed his conviction, alleging that his indictment was constitutionally defective under the Fifth Amendment because the statutory aggravating factors had not been charged by the grand jury. Id. at 942. Sitting en banc, the Eighth Circuit Court of Appeals considered whether the alleged defects in the indictment were harmless. In performing its harmless error analysis, the Eighth Circuit "limit[ed] [itself] to the evidence presented to the grand jury at the time it was asked to indict [the defendant]." Id. at 946. The court thereafter concluded that "beyond a reasonable doubt . . . the error in this case was harmless . . . ." Id. The court reasoned that, if asked to do so, "any rational grand jury . . . would have found probable

cause to charge [the defendant] with the requisite mental state" and at least one of the statutory aggravating factors based on the evidence presented to them, specifically the witness testimony. Id. at 947-49. The alleged error in Allen's indictment was harmless because there was "no realistic possibility that Allen's grand jury would have declined to charge a statutory aggravating factor or the mens rea requirement [had they been asked to do so] in order to avoid exposing [the defendant] to the death penalty." Id. at 949.

Similar to the evidence in Allen, the evidence presented to the Grand Jury in this case, particularly the witness testimony, was, beyond a reasonable doubt, sufficient for them to charge the intent requirement and the statutory aggravating factor of "premeditation and substantial planning" had the Grand Jury been asked to so charge. Furthermore, the allegations in the Indictment that Hammer "with premeditation and malice aforethought, did kill Andrew J. Marti, by strangling him with a cloth cord or homemade garrote," gave Defendant ample notice of the charge against him and did not prejudice his ability to defend against that charge. (Doc. No. 1.) Accordingly, the alleged defects in the Indictment as argued by Defendant are harmless ones.

## IV.    CONCLUSION

For the forgoing reasons, the Court will deny Hammer's Motion to Preclude the Capital Prosecution Because the Government Failed to Indict on Either the Statutory Intent Factors or Statutory Aggravating Factors. (Doc. No. 1332.)

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| | : | NO. 96-239 |
| v. | : | |
| | : | |
| DAVID PAUL HAMMER, | : | |
| | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this 8th day of December 2011, upon consideration of Defendant's Motion to Bar Capital Prosecution Because the Government Failed to Indict on Either the Statutory Intent Factors or Statutory Aggravating Factors (Doc. No. 1332), Government's Brief in Opposition (Doc. No. 1357), Defendant's Reply Brief (Doc. No. 1366), and Defendant's Post-Argument Brief (Doc. No. 1387), and in accordance with the Opinion of this Court dated December 8, 2011, it is **ORDERED** that Defendant's Motion to Bar Capital Prosecution Because the Government Failed to Indict on Either the Statutory Intent Factors or Statutory Aggravating Factors (Doc. No. 1332) is **DENIED**.

BY THE COURT:

*/s/ Joel Slomsky*
JOEL H. SLOMSKY, J.