IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

DAVID PAUL HAMMER,

                          Defendant.

CRIMINAL ACTION
NO. 4:96-CR-0239

## OPINION

**Slomsky, J.**                                              **February 28, 2014**

## I.  INTRODUCTION

Before the Court are three Motions in Limine filed by Defendant David Paul Hammer

seeking to preclude certain evidence from admission at his re-sentencing hearing.  Specifically,

Defendant has filed the following motions:  (1) a Motion in Limine to Preclude the Admission of

Irrelevant and Constitutionally Improper Evidence Under the Guise of Future Dangerousness; (2)

a Motion in Limine to Preclude the Admission of Irrelevant and Constitutionally Improper

Evidence in Support of the Prior Criminal Convictions Involving Use or Threat of Violence

Aggravator (18 U.S.C. § 3592(c)(2)); and (3) a Motion in Limine to Preclude the Admission of

Irrelevant and Constitutionally Improper Evidence Under the Guise of Victim Impact Evidence.

(Doc. Nos. 1523-1528.)  The Government submitted a Consolidated Opposition to Defendant's

Motions in Limine, and Defendant submitted a Consolidated Reply.  (Doc. Nos. 1550, 1556.)

For reasons that follow, Defendant's Motions will be granted in part and denied in part.

## II.  BACKGROUND

On September 18, 1996, a Grand Jury returned an indictment against Defendant David

Paul Hammer.  (Doc. No. 1.)  He was charged with killing Andrew Marti at the Allenwood

Federal Correctional Complex in White Deer, Pennsylvania on April 13, 1996, in violation of 18

U.S.C. § 1111.  (Id.)  On April 9, 1997, the Government filed a notice of its intent to seek the

death penalty.  (Doc. No. 93.)

 Trial began on June 2, 1998, following jury selection for both a guilt and penalty phase,

and continued until June 22, 1998.  (Doc. Nos. 448, 489-503.)  On June 22, 1998, after fourteen

days of trial, Defendant withdrew his prior not guilty plea and admitted to having killed Marti

with premeditation and malice aforethought.  (Doc. No. 504.)

 On June 30, 1998, the court commenced a hearing to determine whether the death penalty

should be imposed, in accordance with 18 U.S.C. § 3593(b).  (Doc. No. 553.)  It continued until

July 20, 1998.  On July 21, 22 and 23, 1998, counsel presented closing arguments (Doc. Nos.

565-567.)  On July 23, 1998, the jury began its deliberations and returned a death penalty verdict

on July 24, 1998.  (Doc. No. 572.)  On November 4, 1998, after denying motions for a new trial,

District Court Judge Malcolm Muir imposed the death penalty.  (Doc. No. 648.)

 The Third Circuit granted Defendant's motion for voluntary dismissal of his direct

appeal, United States v. Hammer, 226 F.3d 229 (3d Cir. 2000), cert. denied, 532 U.S. 959 (2001),

and denied his rehearing petition seeking reinstatement of the appeal.  See United States v.

Hammer, 239 F.3d 302 (3d Cir. 2001), cert. denied, 534 U.S. 831 (2001).

 On March 29, 2002, Defendant initiated habeas corpus proceedings, pursuant to 28

U.S.C. § 2255.  (Doc. No. 767.)  Judge Muir held an evidentiary hearing that began on July 14,

2005 and continued intermittently until September 29, 2005.  In an Opinion dated December 27,

2005, Judge Muir denied Defendant's request to withdraw his guilty plea but granted him a new

penalty phase hearing.  United States v. Hammer, 404 F. Supp. 2d 676 (M.D. Pa. 2005).  This

decision was based on the Government's failure to disclose material information to which

Defendant was entitled in violation of Brady v. Maryland.  Id. at 801 (citing 373 U.S. 83, 215

(1963)).  The court also found that some of the jury's findings on mitigating factors were

erroneous.  Id.

On July 9, 2009, Judge Muir ordered the Government to file a motion to have this case

placed on a trial list for a new penalty phase trial within sixty days.  (Doc. No. 1245.)  Thereafter,

Defendant submitted a request for the Department of Justice to reconsider its decision to seek the

death penalty.  A review of the case was conducted by the Department of Justice.  (Doc. No.

1289 at ¶ 8.)  The review concluded on January 6, 2011 when Attorney General Eric Holder

authorized the prosecution to seek the death penalty against Defendant.  (Doc. No. 1300.)  On

January 7, 2011, the Government filed a motion requesting the case be placed on the trial list for

a new penalty proceeding.  (Id.)

On January 12, 2011, Judge Muir entered an Order reassigning the case to this Court.

(Doc. No. 1301.)  The re-sentencing hearing is set to take place before this Court in May 2014.

On October 1, 2012, in response to this Court's Order, the Government submitted an

Informational Outline Regarding Proof of Aggravating Factors and Notice of Experts.  (Doc. No.

1489.)  Subsequently, Defendant filed the three Motions in Limine and supporting briefs seeking

to preclude certain evidence listed in the Informational Outline.  (Doc. Nos. 1523-1528.)  As

noted, the Government submitted a Consolidated Opposition to Defendant's Motions in Limine

and Defendant submitted a Consolidated Reply.  (Doc. Nos. 1550, 1556.)  These Motions are

now ripe for a decision before this Court.

**III.    STANDARD OF REVIEW**

**A.    The Penalty Phase in General**

The Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591, et seq., sets forth the

findings that a jury must make during the penalty phase of a capital case.  First, the jury must

determine whether the defendant is eligible for the death penalty by deciding whether the

Government has proven beyond a reasonable doubt (1) the defendant is eighteen years or older; (2) that the defendant acted with the requisite intent pursuant to 18 U.S.C. § 3591(a); and (3) the existence of one statutory aggravating factor.  See 18 U.S.C. §§ 3591(a), 3592(c), 3593(c), (e).  If the jury determines that the defendant is eligible, then in a separate hearing the same jury must consider whether the death penalty should be imposed after balancing all of the statutory and non-statutory aggravating factors and mitigating factors.

### B.     Admissibility of Evidence During the Penalty Phase

Pursuant to the FDPA, during the sentencing portion of a capital case, the Government is required to introduce evidence of a statutorily-based aggravating circumstance that warrants the penalty of death.  18 U.S.C. § 3592.  Once the fact-finder determines beyond a reasonable doubt that one of the statutory aggravating factors applies, the Government may introduce evidence of non-statutory aggravating factors.  United States v. Regan, 228 F.Supp. 2d 742, 749 (E.D. Va. 2002).

During the sentencing phase, the Federal Rules of Evidence do not apply. See 18 U.S.C. § 3593(c).  Evidence supporting aggravating factors, however, must meet a "strikingly high level of relevance and reliability."  United States v. Bin Laden, 126 F. Supp. 2d 290, 302 (S.D.N.Y. 2001); United States v. Solomon, 513 F. Supp. 2d 520, 534 (W.D. Pa. 2007) (discussing "heightened reliability" standards for capital sentencing hearings).

In addition to this heightened reliability and relevancy requirement, the probative value of the evidence must outweigh the danger of creating unfair prejudice, confusing the issues, or misleading the jury in order to be admissible.  18 U.S.C. § 3593(c).  "The balance of probative value and unfair prejudice must be weighed more carefully in a death penalty case than in normal cases."  United States v. Gilbert, 120 F. Supp. 2d 147, 150-51 (D. Mass. 2000).

IV.     **ANALYSIS**

A.      **Victim Impact Evidence**

The Government intends to introduce victim impact evidence as a non-statutory

aggravating factor at sentencing.  (Doc. No. 1489 at 3-4.)  In its Information Outline, the

Government proffers the following testimony:

> In addition, the government will be presenting the testimony of the
> victim's father, Robert Marti, and his sister Pamela Marti.  Both
> family members will present testimony about the victim's life and
> how his death affected their family.   In particular, the family
> members will describe how the family took repeated steps to help
> Andrew Marti given the physical and mental problems he faced
> after surviving hundreds of epileptic seizures when he was a young
> child.

(Id.)  The Government intends to introduce this testimony as victim impact evidence pursuant to

18 U.S.C. 3593(a).  Defendant also alleges that the Government may seek to introduce additional

evidence elicited during the deposition of Robert Marti, the father of Andrew Marti.  Defendant

argues that this evidence and testimony should be excluded because it exceeds what is allowed

under the FDPA.

The FDPA and Supreme Court precedent firmly establish that victim impact evidence is

admissible at the sentencing phase of trial.  See 18 U.S.C. § 3593(a); Payne v. Tennessee, 501

U.S. 808, 827 (1991) (holding that the Eighth Amendment "erects no per se bar" to the

admission of victim impact evidence and prosecutorial argument on the subject).  Specifically,

the Government is permitted to introduce "oral testimony, a victim impact statement that

identifies the victim of the offense and the extent and scope of the injury and loss suffered by the

victim and the victim's family, and any other relevant information."  Id.  The Supreme Court has

held "that the Constitution permits evidence 'concerning the victim's personal traits and the

effect of the crime on her family . . . so long as . . . victim impact factors are used to direct the

jury to the individual circumstances of the case.'" <u>United States v. Cooper</u>, 91 F. Supp. 2d 90,

110 (D.D.C. 2000) (citations omitted).  The Supreme Court has also recognized, however, that

evidence that is so unduly prejudicial that it renders the trial fundamentally unfair should be

prohibited.  <u>Payne</u>, 501 U.S. at 825.  The scope and limit of victim impact evidence "is a matter

for the court's discretion and must be determined with consideration for the constitutional

limitation that the jury must not be influenced by passion or prejudice."  <u>United States v.</u>

<u>McVeigh</u>, 944 F. Supp. 1478, 1488 (D. Colo. 1996) (<u>citing</u> <u>Payne</u>, 501 U.S. at 825).

Here, the Government seeks to admit certain testimony that appears prejudicial and goes

beyond the bounds of impact victim factors that direct the jury to the individual circumstances of

the case.  As stated above, 18 U.S.C. § 3593(a) provides that victim impact evidence must be

limited to "factors concerning the effect of the offense on the victim and the victim's family . . ."

and should identify "the victim of the offense and the extent and scope of the injury and loss

suffered by the victim and the victim's family, and any other relevant information."  18 U.S.C. §

3593(a).  Testimony describing "how [Andrew Marti's] family took repeated steps to help

Andrew Marti given the physical and mental problems he faced after surviving hundreds of

epileptic seizures when he was a young child" does not appear to be sufficiently related to the

effect of Marti's death on his family, but only to how the family dealt with the debilitating effects

of seizures that took place years ago.  Such evidence arouses sympathy and does not appear to

direct the jury to the individual circumstances of the case.  The fact that the family no longer has

to deal with Marti's physical and mental problems due to his death, or the effect on them in no

longer having to do so, is not probative enough to outweigh the unfair prejudice arising from the

fact that Marti had hundreds of seizures when he was a young child.  Moreover, Marti was

incarcerated for a considerable period at the time of his death and his family members were not

providing the help on a daily basis.  Undoubtedly, Marti's father and sister were devoted and caring people.  However, the probative value of the evidence does not outweigh the danger of creating unfair prejudice.  Therefore, evidence of this aspect of Marti's life as particularized in the proffer quoted above will be excluded.

Further, to the extent that the proffered evidence supports the statutory aggravator that Marti was particularly vulnerable, that issue was decided by District Court Judge Malcolm Muir at the initial sentencing proceeding.  Judge Muir held that Marti was not a particularly vulnerable victim.  This decision will be followed by this Court and will apply at Defendant's re-sentencing hearing.

Defendant also contends that at the deposition of Robert Marti, Andrew Marti's father, the Government elicited the following: (1) a lengthy history of Andrew Marti's educational, military, and work history; (2) a history of the educational and employment history of Robert Marti's other children; (3) evidence about the circumstances of Andrew Marti's birth; (4) testimony about an unrelated incident in which Andrew Marti was shot by someone other than Defendant; (5) testimony about another unrelated incident in which Andrew Marti was assaulted while in prison by someone other than Defendant; (6) the contents of a letter that Robert Marti wrote to the warden in an effort to ensure that Andrew Marti was protected and received adequate treatment; and (7) testimony that Robert Marti never received a letter from Defendant apologizing for the death of Andrew Marti.  (Doc. No. 1528 at 6.)  To the extent that the Government intends to introduce this evidence as victim impact evidence either through statements, oral testimony, or documents, the Government will be ordered to provide the statements, oral testimony, and documents to both the Court and Defendant in an organized

binder with appropriate labels describing the enclosures.[1]  See United States v. Cooper, 91 F.

Supp. 2d 90, 111 (D.D.C. 2000) (ordering the Government to provide "more specific information

concerning the extent and scope of the injuries and loss suffered by each victim, his or her family

members, and other relevant individuals, and as to each victim's 'personal characteristics' that

the government intends to prove).  This submission is necessary because the Court simply does

not have enough information in order to rule on the objections.  Once this information is

submitted, the Court will conduct a hearing on the admissibility of the evidence prior to the re-

sentencing hearing.

###### B.      Future Dangerousness

One of the non-statutory aggravating factors alleged against Defendant is his future

dangerousness.  In its Informational Outline, the Government proffers the following as evidence

it seeks to introduce to show future dangerousness:

> In 1981, the defendant escaped from a medium security facility in
> Oklahoma.  In 1982, he attempted to escape by crawling through a
> fence.  In 1983, he escaped and in 1986, he held a correctional
> officer hostage.  In 1989, he informed the Warden that he had a
> person outside the prison plant two bombs in the Oklahoma City
> Courthouse and the State Capitol.  In 1993, the defendant took a
> prison physician hostage.

(Doc. No. 1489 at 5.)  The Government also seeks to introduce evidence regarding the length of

the sentence that Defendant is currently serving, as well as portions of published books authored

by Defendant, the circumstances of the 1983 shooting of Thomas Upton, and various prison

misconducts received by Defendant.  Defendant argues that these incidents are too remote in

time, are irrelevant to future dangerousness, and should otherwise be excluded as unduly

prejudicial.

---

[1] The Court notes that Defendant may already have some or all of this evidence.  Any binders
made available to the Court must also be made available to Defendant.

Defendant correctly points out that any evidence that the Government intends to present in support of this aggravating factor is limited to potential dangerousness in prison.  Where the jury's only sentencing choices are life without parole or death, the Government's future dangerousness evidence must be limited to evidence "relating to Defendant's future dangerousness in the context of life imprisonment."  United States v. Rodriguez, 2006 WL 487117, *5 (D.N.D. 2006); see also Gilbert, 120 F. Supp. 2d at 154 (noting that the "prosecution concedes that the jury must evaluate defendant's 'future dangerousness' in the context of life in a prison setting" and rejecting certain evidence because it lacked any substantial relevance to defendant's dangerousness in a prison setting); United States v. Llera Plaza, 179 F. Supp. 2d 464 (E.D. Pa. 2001).

Evidence of the length of time Defendant is currently serving, which is 1200 years, was barred by Judge Muir during the initial sentencing proceeding.  This Court will follow Judge Muir's ruling and any evidence regarding the length of Defendant's current sentence will be precluded.

The Government has agreed not to produce evidence of any charge for which Defendant was acquitted.  (Doc. No. 1550 at 11.)  As such, the Court need not address the admissibility of the 1986 hostage incident for which Defendant was tried and acquitted.  The Government does intend, however, to present evidence of any unadjudicated conduct.  (Id.)  It appears that the 1993 hostage incident was unadjudicated, and as such it is admissible.  This event is sufficiently related to the future danger that Defendant may pose in a custodial setting.  Further, courts have allowed the Government to use past unadjudicated crimes to support non-statutory factors. United States v. Pleau, 2013 WL 1673109, *5 (D.R.I. Apr. 17, 2013).

Evidence related to Defendant's escapes in 1981, 1982, and 1983, on the other hand, is not admissible unless violence is associated with an escape.  No evidence is proffered that the escapes were accomplished through violent acts aimed at prison personnel.  Moreover, they occurred over thirty years ago.  Therefore, the probative value of this evidence is outweighed by the danger of unfair prejudice.  Moreover, these incidents are not sufficiently related to Defendant's future dangerousness in the context of life imprisonment.  A sentence of life imprisonment would still place Defendant under restrictive prison conditions in view of his conviction for killing another inmate, Andrew Marti, and make it unlikely that any future prison escapes could occur.

Next, evidence that in 1989 Defendant informed the Warden that he had a person outside the prison plant bombs in the Oklahoma City Courthouse and State Capitol is not admissible. These statements were made about twenty-five years ago.  Defendant has been incarcerated during this entire period.  The statements are too remote in time and do not appear to have been investigated to meet the test of having a high level of relevance and reliability.

Finally, the Government intends to pursue facts of Defendant's killing of Marti in support of both the future dangerousness aggravator and the substantial planning and premeditation statutory aggravating factor.  Defendant argues that this evidence should be excluded because the future dangerousness aggravator is impermissibly duplicative of the substantial planning and premeditation factor.  This argument is unavailing.  While courts have held that certain aggravating circumstances may impermissibly overlap and unconstitutionally skew the process of weighing aggravating and mitigating circumstances, this "does not stand for the proposition that any time evidence supports more than one aggravating circumstance those circumstances impermissibly overlap." Cooks v. Ward, 165 F.3d 1283, 1289 (10th Cir. 1998).  Rather, the same

evidence may be used to support more than one aggravator.  Fitzgerald v. Trammell, 2013 WL

5537387, *58 (N.D. Ok. Oct. 7, 2013).  As noted in Cooks and Fitzgerald, the future

dangerousness factor focuses the jury's attention on the likelihood of future violent conduct.  Id.

In contrast, the substantial planning and premeditation factor focuses on the particular nature and

circumstances of Defendant's underlying offense.  Although the same evidence may support

these two aggravating factors, the factors do not necessarily subsume one another.  Thus, the

circumstances of Marti's killing is probative of the factors noted and is admissible at the re-

sentencing hearing.

Finally, Defendant alleges that the Government may intend to submit additional evidence

in support of future dangerousness that should be excluded.  This evidence includes:  (1) asking

the FBI Agent Malocu to read from prison and other records to establish various events; (2)

testimony regarding a 1983 shooting incident by the victim, Mr. Upton; (3) statements that

Defendant made to a reporter regarding his desire to kill the surviving victim whom he shot

when he escaped from prison; (4) portions of the published books by Defendant in which he

admits the lengths to which he will go to escape and seek revenge on individuals whom he

believes have wronged him; (5) evidence of a March 19, 1995 incident at USP-Lampoc

involving Defendant; (6) other prison misconducts by Defendant; and (7) evidence regarding the

reasons behind Defendant's transfer from Oklahoma custody to federal custody.  (Doc. No.

1526.)

While some, if not all, of this evidence may have been allowed by Judge Muir at the prior

sentencing hearing, since that time the Supreme Court has further restricted the use of hearsay

and testimonial evidence.  In Crawford v. Washington, the Supreme Court barred the admission

of testimonial statements of a witness who does not appear at trial.  541 U.S. 36 (2004).

Moreover, courts have excluded incidents of a defendant's prison misconduct because they "could not have been established by reliable evidence, such as live testimony." United States v. Sampson, 335 F. Supp. 2d 166, 224 (D. Mass. 2004). Many of the statements and documents listed above may constitute prohibited testimonial or hearsay evidence that does not satisfy the standard of a high level of relevance and reliability. To the extent that the Government intends to rely on such evidence, the Court will order that the records, documents, and statements be made available to both the Court and Defendant, again in an organized binder with appropriate labels. Again, this submission is necessary because the Court needs more information in order to make an informed decision on admissibility. The Court will then rule on the admissibility of the evidence prior to the re-sentencing hearing.

### C.      Prior Criminal Conviction Involving Use or Threat of Violence Aggravator

The Government seeks to pursue the Section 3592(c)(2) aggravating factor that Defendant was convicted of two or more state or federal offenses involving the use or threat of violence against another person. In its Informational Outline, the Government states that it intends "to rely on evidence introduced at the previous sentencing to establish" this aggravator. (Doc. No. 1489 at 2, n. 1.) The Government also intends to admit prior convictions in support of the future dangerousness aggravating factor. Defendant submits that much of this evidence violates the legal precepts noted above, and that evidence regarding the victim's death is duplicative.

As previously stated, evidence supporting aggravating factors must meet a strikingly high level of relevance and reliability. United States v. Merritt, 2013 WL 395458, at *4 (E.D. Pa. Feb. 1, 2013). At sentencing hearings, the Government may admit evidence of unadjudicated criminal activity; however "where the government attempts to use unadjudicated acts of violence

and misconduct, the heightened standard of reliability applicable to capital sentencing proceedings requires that the hearsay rule be fully applicable to the penalty phase proceeding." United States v. O'Driscoll, 250 F. Supp. 2d 432, 436 (M.D. Pa. 2002).  The Government must also prove Defendant's prior misconduct by direct evidence.  United States v. Davis, 912 F. Supp. 938, 946 n. 20 (E.D. La. 1996).

Moreover, where an aggravating factor is "necessarily and wholly subsumed by a different aggravator," it may not be pursued.  "The two factors must entirely replicate each other and not just overlap in some response in order to be impermissibly duplicative.  Even if one factor is relevant to another and involves either a common method of proof or some of the same evidentiary support, the factors are not impermissibly duplicative."  Solomon, 513 F. Supp. 2d at 537.

Pursuant to 18 U.S.C. § 3592(c)(2), the Government may offer evidence that Defendant was previously convicted of a federal offense involving the use or threat of violence against another person.  18 U.S.C. § 3592(c)(2).  The Government may do so, however, only through the use of admissible evidence.  Ordinarily, a conviction is proven through the submission of a certified authenticated copy of the conviction and/or testimony by the custodian of records.  To the extent that the items listed above provide proof of the conviction, they will be admissible at the re-sentencing hearing.  As such, subject to the Court's review and a ruling on the admissibility of this evidence, Thomas Upton, the victim of the 1983 shooting, and Louis Keel, the prosecutor in that case, will be permitted to testify regarding Defendant's 1983 shooting of Upton if it is shown that Defendant was convicted for this conduct.

Defendant submits, however, that these witnesses will also testify about Defendant's pro se representation, the contents of various correspondences, commitment orders contained in the

Oklahoma Department of Corrections records, the contents of a letter from a reporter, contacts with Defendant during pretrial proceedings, and Defendant's psychological symptoms.  (Doc. No. 1524 at 5-6.)  Defendant also contends that the Government may also call a reporter, David Walter, to testify about an article he wrote about an interview he conducted with Defendant and the excerpted contents of a tape of the interview with Defendant, which the Government introduced at the previous sentencing hearing.

First, Messrs. Keel and Upton may not be qualified to give an opinion regarding Defendant's psychological symptoms.  It does not appear that as lay witnesses, they can provide such an opinion without running afoul of the heightened standard of relevance and reliability.

With respect to other aspects of Messrs. Upton and Keel's testimony, the Court will require a more detailed proffer from the Government as to what their testimony will entail to ensure that it conforms to the legal requirements on admissibility of this statutory factor.  The Government will be required to provide the Court and Defendant with the documents and statements that are being objected to by Defendant, again in an organized binder with appropriate labels.

## V.    CONCLUSION

For the forgoing reasons, Defendant's Motions in Limine are granted in part and denied in part.  Defendant's request for a more detailed proffer of the evidence described above is granted.  The Government will be required to submit this evidence to both the Court and Defendant in an organized binder with appropriate labels.  An appropriate Order follows.

The rulings made in this Opinion are based upon the Motions and Memoranda of Law submitted by the parties.  No exhibits were attached to the Motions.  Should either party desire reconsideration of the rulings, a motion should be filed with supporting exhibits attached.  In the

alternative, the Court will consider reconsideration requests at the hearing on the evidence before re-sentencing.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

    v.

DAVID PAUL HAMMER,

              Defendant.

CRIMINAL ACTION
NO. 4:96-CR-0239

## <u>ORDER</u>

**AND NOW**, this 28th day of February 2014, upon consideration of Defendant's Motion

in Limine to Preclude the Admission of Irrelevant and Constitutionally Improper Evidence Under

the Guise of Future Dangerousness and Brief in Support of the Motion (Doc. Nos. 1534, 1524),

Defendant's Motion in Limine to Preclude the Admission of Irrelevant and Constitutionally

Improper Evidence in Support of the Prior Criminal Convictions Involving Use or Threat of

Violence Aggravator (18 U.S.C. § 3592(c)(2)) and Brief in Support of the Motion (Doc. Nos.

1525, 1526), Defendant's Motion in Limine to Preclude the Admission of Irrelevant and

Constitutionally Improper Evidence Under the Guise of Victim Impact Evidence and Brief in

Support of the Motion (Doc. Nos. 1527, 1528), the Government's Consolidated Opposition to

Defendant's Motions in Limine (Doc. No. 1550), and Defendant's Reply (Doc. No. 1566), and in

accordance with the Opinion of the Court issued this day, it is **ORDERED** as follows:

1.    Defendant's Motion in Limine to Preclude the Admission of Irrelevant and
Constitutionally Improper Evidence Under the Guise of Future Dangerousness
and Brief in Support of the Motion (Doc. Nos. 1523, 1524), Defendant's Motion
in Limine to Preclude the Admission of Irrelevant and Constitutionally Improper
Evidence in Support of the Prior Criminal Convictions Involving Use or Threat of
Violence Aggravator (18 U.S.C. § 3592(c)(2)) and Brief in Support of the Motion
(Doc. Nos. 1525, 1526), and Defendant's Motion in Limine to Preclude the
Admission of Irrelevant and Constitutionally Improper Evidence Under the Guise
of Victim Impact Evidence and Brief in Support of the Motion (Doc. Nos. 1527,
1528), are **GRANTED IN PART AND DENIED IN PART**.

2.    The Government is **ORDERED** to provide both the Court and Defendant by
**April 15, 2014** with a detailed proffer of the evidence that it intends to submit in
an organized binder with appropriate labels, in accordance with the Opinion of the
Court.

BY THE COURT:


/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.