IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

DAVID PAUL HAMMER,

               Defendant.

CRIMINAL ACTION
NO. 4:96-CR-0239

## OPINION

**Slomsky, J.**                                                                      **May 29, 2014**

## I.    INTRODUCTION

Before the Court is a Motion for Reconsideration filed by the Government. (Doc. No.

1659). The Government requests that the Court reconsider in part its February 28, 2014 Opinion

and Order, in which the Court held that evidence of Defendant's 1981 and 1983 prison escapes

could not be introduced at the resentencing hearing. (Doc. No. 1626.) In the February 28, 2014

Opinion, the Court noted that the parties had not submitted any supporting exhibits in support of

their positions and the Court would reconsider this matter if a request was made with supporting

documentation. Subsequently, the Government filed the instant Motion, along with supporting

exhibits. (Doc. No. 1660.) Defendant filed a Response. (Doc. No. 1681.) For reasons that

follow, the Government's Motion will be granted.

## II.    BACKGROUND

On September 18, 1996, a Grand Jury returned an indictment against Defendant David

Paul Hammer. (Doc. No. 1.) He was charged with killing Andrew Marti at the Allenwood

Federal Correctional Complex in White Deer, Pennsylvania on April 13, 1996, in violation of 18

U.S.C. § 1111. (Id.) On April 9, 1997, the Government filed a notice of its intent to seek the

death penalty.  (Doc. No. 93.)  At the time, this case was before the Honorable Judge Malcolm

Muir, a U.S. District Court Judge who is now deceased.

On June 22, 1998, after fourteen days of trial, Defendant withdrew his not guilty plea and

admitted killing Marti with premeditation and malice aforethought.  (Doc. No. 504.)  On June 30,

1998, a hearing commenced to determine whether the death penalty should be imposed, in

accordance with 18 U.S.C. § 3593(b).  (Doc. No. 553.)  On July 23, 1998, the jury began its

deliberations.  It returned a verdict on July 24, 1998 that Defendant receive the death penalty.

(Doc. No. 572.)  On November 4, 1998, after denying motions for a new trial, the district court

imposed the death penalty.  (Doc. No. 648.)

On March 29, 2002, Defendant filed a Petition for Writ of Habeas Corpus collaterally

attacking his conviction and sentence pursuant to 28 U.S.C. § 2255.  (Doc. No. 767.)  Judge Muir

held an evidentiary hearing on the § 2255 petition.  On December 27, 2005, Judge Muir issued

an Opinion denying Defendant's request to withdraw his guilty plea but granting him a new

penalty phase hearing.  United States v. Hammer, 404 F. Supp. 2d 676 (M.D. Pa. 2005).  The

resentencing hearing is set to take place before this Court in June 2014, and the Government's

Motion for Reconsideration (Doc. No. 1660) is now ripe for decision.

### A.  Defendant's Escape from Joseph Harp Correctional Center

On October 16, 1981, Defendant escaped from Joseph Harp Correctional Center in

Lexington, Oklahoma.  (Doc. No. 1660 at 1.)  At approximately 10:30 p.m., Officer D. Brents

and Sergeant D. Hall discovered that Defendant was missing from his cell.  (Id.)  Defendant had

placed a dummy in the bed in his cell to make it appear as though he was asleep.  (Id. at 1-2.)

Officers discovered a hole cut in the inside and outside perimeter fences.  (Id.)  Personnel

discovered that a pair of line-man pliers were missing from the tool room and believed that they

were used to cut holes in the fences.  (Id. at 2.)  Shortly thereafter, a homemade knife was found.  (Id.)  Several days later, a plastic glove full of pepper was found.  It is alleged that Defendant dropped the glove during the escape to prevent dogs from tracking him.  (Id.)

Defendant was apprehended approximately ten days later.  (Id.)  During the escape, Defendant committed criminal conduct involving a family with the name "Huddlestons."  (Id.)  Defendant used a ruse to get into the Huddlestons' home.  (Id.)  He then used a fireplace poker in a threatening manner and ultimately stole the Huddlestons' car.  (Id.)  Defendant wrote about these events in a short story entitled "Escape and Capture" in his book, "The Final Escape."  (Id.)

Defendant was convicted of the following offenses in connection with this escape and his conduct during the escape: (1) escape; (2) robbery by fear; and (3) larceny of an automobile.  (Id.)  He initially received twenty-year concurrent sentences for the robbery by fear and larceny of an automobile, but the Court of Criminal Appeals later modified these sentences to be ten years' imprisonment to run concurrently.  Hammer v. State, 671 P.2d 677 (1983).

### A. Defendant's Escape from Oklahoma State Reformatory

On October 27, 1983, Defendant escaped from the Oklahoma State Reformatory in Granite, Oklahoma.  (Doc. No. 1660 at 2.)  To effect the escape, Defendant collected street clothing and dressed as a construction worker.  (Id.)  He then obtained a pair of wire cutters and wedged himself under a construction van that was parked on the prison yard.  (Id.)  Once the construction crew moved the van to a civilian lot, Defendant crept from the van to a parked 1966 Chevy pickup truck, which he then hotwired.  (Id.)  Defendant drove the pickup truck out of the prison grounds to Hobard, Oklahoma, where he abandoned the vehicle.  (Id.)  Defendant then stole another pickup truck and its contents, including a checkbook, a .22 pistol, and a box of shells.  (Id.)  Defendant used the checkbook to purchase goods for his survival.  (Id.)

The following day, on October 28, 1983, Defendant shot Thomas Upton after Defendant carjacked and kidnapped him.  (Id.)  Defendant was eventually arrested in Los Angeles, California, at the end of December 1983.  (Id.)  He was convicted of the following offenses in connection with this escape and his conduct during the escape: (1) kidnapping; (2) robbery with firearm; and (3) shooting with intent to kill.  (Id.)  Defendant received a 1,200 year sentence for the Upton shooting.  (Id.)

## III.    STANDARD OF REVIEW

### A.    The Penalty Phase in General

The Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591, et seq., sets forth the findings that a fact-finder must make during the penalty phase of a capital case.  First, the fact-finder must determine whether the defendant is eligible for the death penalty by deciding whether the Government has proven beyond a reasonable doubt (1) the defendant is eighteen years or older; (2) that the defendant acted with the requisite intent pursuant to 18 U.S.C. § 3591(a); and (3) the existence of one statutory aggravating factor.  See 18 U.S.C. §§ 3591(a), 3592(c), 3593(c), (e).  If the fact-finder determines that the defendant is eligible, then in a separate hearing the fact-finder must consider whether the death penalty should be imposed after balancing all of the statutory and non-statutory aggravating and mitigating factors.

### B.    Admissibility of Evidence During the Penalty Phase

Pursuant to the FDPA, during the sentencing portion of a capital case, the Government is required to introduce evidence of a statutorily-based aggravating circumstance that warrants the penalty of death.  18 U.S.C. § 3592.  Once the fact-finder determines beyond a reasonable doubt that one of the statutory aggravating factors applies, the Government may introduce evidence of non-statutory aggravating factors.  United States v. Regan, 228 F.Supp. 2d 742, 749 (E.D. Va. 2002).

During the sentencing phase, the Federal Rules of Evidence do not apply. See 18 U.S.C. § 3593(c).  Evidence supporting aggravating factors, however, must meet a "strikingly high level of relevance and reliability."  United States v. Bin Laden, 126 F. Supp. 2d 290, 302 (S.D.N.Y. 2001); United States v. Solomon, 513 F. Supp. 2d 520, 534 (W.D. Pa. 2007) (discussing "heightened reliability" standards for capital sentencing hearings).

In addition to this heightened reliability and relevancy requirement, the probative value of the evidence must outweigh the danger of creating unfair prejudice, confusing the issues, or misleading the jury in order to be admissible.  18 U.S.C. § 3593(c).  "The balance of probative value and unfair prejudice must be weighed more carefully in a death penalty case than in normal cases."  United States v. Gilbert, 120 F. Supp. 2d 147, 150-51 (D. Mass. 2000).

### C.  Motion for Reconsideration

A judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds:  (1) an intervening change in the controlling law;  (2) the availability of new evidence that was not available when the court made the prior ruling; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011); see also E.D. Pa. Local Civ. R. 7.1(g).

## IV.   ANALYSIS

As noted, the Government requests that the Court reconsider its ruling that evidence related to Defendant's 1981 and 1983 prison escapes is inadmissible.  The Government submits that this evidence is relevant to Defendant's future dangerousness and should therefore be admitted.

The United States Supreme Court has noted that future dangerousness is a relevant consideration during the penalty phase of a capital trial, recognizing that a defendant's future dangerousness bears on all sentencing determinations made in our criminal justice system.

Simmons v. South Carolina, 512 U.S. 154, 162 (1994) (citing Jurek v. Texas, 428 U.S. 262, 275 (1976) (noting that "any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose."))  Evidence of future dangerousness is admissible even when a defendant is not eligible for parole.  United States v. Allen, 247 F.3d 741, 766 (8th Cir. 2001).  For example, in Allen, the Supreme Court held:

> "[a] defendant in prison for life is still a risk to prison officials and to other inmates, and even though a life sentence without the possibility of parole greatly reduces the future danger to society from that particular defendant, there is still a chance that the defendant might escape from prison or receive a pardon or commutation of sentence."

Id.  Moreover, the Government is not limited to arguing future dangerousness in a prison setting. United States v. Fields, 516 F.3d 923, 942-43 (10th Cir. 2008).

Courts have also noted the criminal severity of a prison break.  In United States v. Luster, the Third Circuit explained:

> Escape is a continuing crime; it does not end when the escapee completes the act of leaving a correctional facility.  Rather, the escapee must continue to evade police and avoid capture.  As the Tenth Circuit noted, an escapee "is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees.  Consequently, violence could erupt at any time."  United States v. Gosling, 39 F.3d 1140, 1142 (10th Cir. 1994).  Thus, every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so.

305 F.3d 199, 201 (3d Cir. 2002).

Here, the 1981 and 1983 escapes are relevant to Defendant's future dangerousness.  As the evidence shows, these escapes culminated in violent acts that Defendant committed while he

was a fugitive.  After the 1981 escape, and while he was a fugitive, Defendant engaged in robbery by fear and larceny of an automobile with respect to the Huddlestons.  Moreover, after the 1983 escape, and while he was a fugitive, Defendant engaged in kidnapping, robbery with a firearm, and shooting with intent to kill with respect to Thomas Upton.  If proven, these are serious acts of violence that demonstrate future dangerousness, even if Defendant were to remain in custody in a high security prison.

Moreover, the crime of escape is serious in and of itself.  Defendant's multiple escapes, together with the crimes he committed while he was a fugitive, demonstrate a pattern of violence and dangerousness.  As noted, escape is a continuing crime that could erupt in violence at any time.  Given the exhibits submitted by the Government, and despite the remoteness in time of the escapes and violent acts, it is appropriate for the Court to consider the escapes in deciding the future danger that Defendant would pose if he were to serve a life sentence without parole.

V.   **CONCLUSION**

For the foregoing reasons, the Court will reconsider its ruling on the 1981 and 1983 escapes and allow evidence of the escapes and acts following the escapes to be admitted at the resentencing hearing.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

DAVID PAUL HAMMER,

                    Defendant.

CRIMINAL ACTION
NO. 4:96-CR-0239

## ORDER

**AND NOW**, this 28th day of May 2014, upon consideration of the Government's Motion for Reconsideration of the Court's Decision to Exclude Evidence of Escapes (Doc. Nos. 1659, 1660), and Defendant's Response (Doc. No. 1689), and in accordance with the Opinion of the Court issued this day, it is **ORDERED** that the Government's Motion for Reconsideration of the Court's Decision to Exclude Evidence of Escapes (Doc. No. 1660) is **GRANTED**.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.